### Gregory *v.* McVeigh.

1. Where, by the laws of a State, an appeal can be taken from an inferior court of the State to the highest court of the same, only with leave of this latter or of a judge thereof, and that leave has been refused in any particular case, in the regular order of proceeding—the refusal not being the subject of appeal to this court—a writ of error, if there be in the case a "Federal question," properly lies, under section 709 of the Revised Statutes, to the inferior court, and not to the highest one.
2. A Federal question exists when—in a suit by a person who seeks to recover property on the ground that a judgment and execution on it by a court of the United States, interpreting a statute of the United States, has deprived him of the property in violation of the first principles of law—the defendant sets up a title under that judgment and execution, and the decision is against the title so set up.

On motion to dismiss, for want of jurisdiction, a writ of error to *the Corporation Court of Alexandria*, Virginia.

The case was thus:

Towards the close of the late rebellion, the United States filed a libel of information, under the act of 17th July, 1862, "to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes"—the act commonly known as "the Confiscation Act"—against certain real estate in Alexandria, Virginia, a State then within the government lines, belonging to one McVeigh, a person then in the rebel lines, to confiscate it.

This act authorized a seizure by the President, of the property in the then loyal States of any person giving aid and comfort to the rebellion, and directed that after the property had been seized, proceedings *in rem* should be instituted in any District Court of the United States, "which proceedings," said the act, "shall conform as nearly as may be to proceedings in admiralty *or revenue cases.*" The act further directed that if, on such proceedings had, the property, whether real or personal, should be found to belong to a person giving aid and comfort to the rebellion, the same should be condemned "as enemies' property," and become

the property of the United States, and be disposed of as the court should direct.

This " Confiscation Act " was the subject of interpretation by this court in several cases which arose in December Term, 1867,* and in which it was adjudged that where the proceedings under the act relate to a seizure of *land*, they present a case of common-law jurisdiction, and are to be conformed in respect to trial by jury to the course of the common law.

In the particular proceedings now before the court, that is to say, the proceedings against McVeigh's land, McVeigh appeared by attorney, interposed a claim to the property, and filed an answer. The District Attorney of the United States submitted a motion that the appearance, answer, and claim should be stricken from the records, for the reason that the respondent was a resident of a place specified, within the Confederate lines, and a rebel. The court (Underwood, J.) granted this motion. A decree *pro confesso* was subsequently entered, the life interest of McVeigh in the property condemned and ordered to be sold, and sold accordingly; one Gregory being the purchaser. McVeigh then brought the case on error to this court; it is reported in 11th Wallace, page 267. The court, by Swayne, J., then said:

" The District Court committed a serious error in ordering the claim and answer of the respondent to be stricken from the files. The order in effect denied the respondent a hearing. It is alleged that he was in the position of an alien enemy, and hence could have no *locus standi* in that forum. If assailed there he could defend there. The liability and the right are inseparable. A different result would be a blot upon our jurisprudence and our civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and of the right administration of justice."

This court accordingly reversed the judgment, and remanded the case with directions to proceed " in conformity to law."

---

* Union Insurance Company *v.* United States, Armstrong's Foundry, and United States *v.* Hart, 6 Wallace, 759, 766, 770.

With this judgment and opinion in his hand, McVeigh now brought ejectment against Gregory, the purchaser, in the Corporation Court of Alexandria, which was the proper court to sue in, to recover the lands in which his life estate had been sold, under the decree in the proceedings under the Confiscation Act.

On the trial the defendant set up the purchase made under the decree in the suit in confiscation, and requested the court to charge that the decree of condemnation divested McVeigh of his life estate. The court refused so to charge, and, contrariwise, charged that

"The sentence of condemnation was void, and the plaintiff was not divested of any part of his title in the premises by reason of the sentence, sale, and deed of the marshal, because the answer, claim, and appearance of McVeigh were struck from the files by the court before the decree was entered, and the said McVeigh was thus denied a hearing, and his property condemned without any opportunity of defence on his part."

The defendant excepted to this charge.

Judgment was rendered, of course, in favor of McVeigh, the plaintiff.

The defendant then addressed a petition to the different *judges* of the Supreme Court of Appeals, of Virginia, praying for a writ of error and supersedeas to the said judgment. The petition was not to the court in its corporate capacity.

The provisions of statute in Virginia* on this subject of writ of error, &c., to the court just named are as follows:

*When and in what case petition for appeal may be presented, time excluded from the computation.*

"SECTION 2. Any person who thinks himself aggrieved by an order·in a controversy concerning the . . . possession of title of property to be changed, or adjudicating the principles of a cause, or to any civil case wherein there is a final judgment, decree, or order, may present a petition . . . for a writ of error or supersedeas to the judgment or order."

---

* Code of Virginia, 1873, Chap. 178.

*Record exhibited with petition; how it is made up; what shall not be copied.*

"SECTION 5. With such petition there shall be a transcript of the record, of so much of the case wherein the judgment, decree, or order is, as will enable the court or judge to whom the petition is to be presented properly to decide on such petition, and to enable the court, if the petition be granted, properly to decide the questions that may arise before it."

*To whom presented.*

"SECTION 9. The petition may be presented to the *court* wherein the case is to be docketed if the writ of error or supersedeas be allowed, or to a *judge* thereof, or, if the judgment, decree, or order be of a county court, to any circuit judge."

*When petition to be rejected, and when rejection final.*

"SECTION 10. . . . . In a case wherein the court or judge to whom a petition is duly presented shall deem the judgment, decree, or order plainly right, and reject it on that ground, if the order of rejection so state, no other petition shall afterwards be presented to the same purpose."

The judges of the Supreme Court of Appeals deeming the judgment complained of to be "plainly right," each and all rejected the petition and refused to grant any writ of error or supersedeas.

This was, therefore, the end to all further proceedings in appeal in the courts of the State.

The defendant now got a writ of error from this court to *the Corporation Court of Alexandria*, assuming the case to come within section 709 of the Revised Statutes (the 25th section of the old Judiciary Act), which enacts that—

"A final judgment or decree in any suit in *the highest court of the State in which a decision in the suit could be had*, where is drawn in question the validity of a treaty or statute of, *an authority exercised under the United States*, and the decision is against its validity . . . may be re-examined and reversed or affirmed in the Supreme Court upon a writ of error."

The Corporation Court of Virginia is not the highest court

of the State of Virginia.   That court is the Supreme Court of Appeals.

*Mr. P. Phillips, in support of the motion to dismiss for want of jurisdiction :*

We place this motion on two grounds:

1st. That the Corporation Court, to which the writ of error was directed, was not the highest court of the State in which the decision on the case could be had.

2d. That the charge given by the judge—to wit, that the confiscation proceedings did not divest McVeigh of his title, on the ground that he had been refused a hearing and his answer stricken from the files—did not involve a "Federal question;" in other words, that such proceedings did not show "an authority exercised under the United States."

1st. *The court was not the highest court of the State in which a decision could be had.*

The statute of Virginia enacts that when the court or *judge* to whom the petition is presented shall deem the judgment plainly right and reject it on that ground, if the order of rejection so state it, no other petition shall afterwards be presented.   The defendant in the present case, having the right · to present a petition for the writ of error to the Court of Appeals, or to the judge, has adopted the latter mode.   His application was rejected not by the Court of Appeals, but by " *all the judges.*"

The appellate jurisdiction of this court is exercised only by virtue of section 709 of the Revised Statutes (the old 25th section of the Judiciary Act), and that confines it to the revision of the judgment of the highest court of the State in which the decision could be had.

The question then is, was the Corporation Court the highest court in the State in which the decision could be had ?

The appellant maintains the affirmative, because he says that he applied to all the judges of the highest court for the writ of error, and that they refused it.

If he had made his application to the court itself, and had had an order rejecting the application, this rejection

would have constituted an affirmance of the judgment below. In other words, it would have been the decision of the highest court of the State that the judgment was plainly right. The writ of error would then, confessedly we suppose, have been only directed to review the judgment of the Court of Appeals. The statute of Virginia requires the petition to be accompanied by the transcript, an assignment of error, and notice to the opposite party. The cause is thus fully before the Court of Appeals, on the showing made by the petitioner, and the decision of the court is as final and complete, as it could have been if the cause had been docketed and regularly argued.

But this is not an open question.

In *The Richmond Railroad Company* v. *The Louisa Railroad Company*,* where the petition for appeal was directed to the Court of Appeals of Virgina, the appellee contended that this court had no jurisdiction of the cause, because the highest court of the State had not rendered a *final judgment*, and that its refusal to allow the application for the appeal was *not an affirmance of the judgment below.*

But this court briefly disposed of the position by saying,

"The decree having been affirmed by the Court of Appeals, by *their refusal to entertain an appeal*, there can be no doubt of the jurisdiction of this court to review the decision of the State court."

In *Bigelow* v. *Forrest*,† the writ was directed to the Court of Appeals, and in this as in the preceding case, the Court of Appeals had merely rejected the petition for the writ of error. This court says:

"There is no ground of complaint that the Supreme Court of Appeals denied the supersedeas to the judgment below."

It is, therefore, clear that in the case now under consideration, the Court of Appeals was the highest court in the State, and that that court had jurisdiction of the judgment complained of.

---

* 18 Howard, 80.                    † 9 Wallace, 347.

If *that* jurisdiction has not been invoked by the plaintiffs in error, they have no right to say that the Corporation Court is the highest court in which the decision could be had.

It is shown by their own averment that they have not invoked the jurisdiction of that court as they might have done, but have made their application for the writ to the *judges.*

If the action of all the judges in refusing the writ is in legal effect the same thing as the refusal by the court, then the court has acted, and, on the authority of the cases cited, the writ of this court must be directed to the Court of Appeals.

If it is not the same, but a different thing, then having the power to invoke the action of the highest court, and having failed to do so, the revisory jurisdiction of this court cannot be extended over the judgment of an inferior court of the State.

Where, indeed, by the law of the State limiting the appeal or writ of error, the judgment of the inferior court is of such an amount or of such a character as not to be subject to the revisory power of the appellate tribunal, such inferior court, *ex vi termini,* is the highest court of the State in which the decision could be had, and then the writ in this court is properly directed to that court. Such was the case of *Downham* v. *Alexandria,*\* where the writ was directed to the Fourth Judicial Court of the State of Virginia, "in which a judgment of the Corporation Court of Alexandria for $200 was affirmed." The writ in that case was sustained, because by act of the State no appeal was allowed from the judgments of said District Court where the matter in controversy did not exceed $1000.

2d. *There is no Federal question.*

The writ of this court can only bring up for review the judgment of a State court "where is drawn in question the validity of a treaty, or statute of, or an authority exercised under the United States."

---

\* 9 Wallace, 659.

Now, Judge Underwood was a judge of the District Court. His powers as judge are specified by statute. His judgment within the limits of his prescribed jurisdiction are conclusive, until reversed by direct proceedings for this purpose. They are then to be regarded as "authority exercised under the United States," and cannot be attacked collaterally. But if this judge render a judgment against a person, or on a subject over which the law has conferred *no jurisdiction*, such a judgment is a nullity, and if presented in another court as a defence, its rejection would not be a denial of "an authority exercised under the United States."

Suppose a record from a Circuit Court of the United States, showing a judgment and sale to be given in evidence, and on inspection it were seen that the declaration averred that the plaintiff and defendant were citizens of the same State. Or that it appeared the judgment was by default, and without either service on defendant or any appearance for him. In neither case would such a proceeding show any "authority exercised under the United States," but on the contrary an exercise of power exercised in violation of its authority.

Now, this particular decree of condemnation made by Underwood, J., was made under the act of 1862, which authorizes the confiscation of property when its owner had been guilty of a certain prescribed offence. The property was not offending; but it was subject to condemnation when the owner was proven to be guilty. On the trial the question of guilt is to be submitted, under the statute, as it has been interpreted by this court—that is to say, under the statute rightly read—to a jury. The party offending is to receive notice, and is entitled to be heard. McVeigh did receive notice and filed his answer, but Underwood, J., refused him a hearing and struck his answer from the files, and then rendered a decree *pro confesso.* Was this the exercise of "an authority under the United States?" Is such a judgment merely erroneous, or is it an absolute nullity? If the former, then we admit that in its rejection by the State court a Federal question is involved. But if, as we main-

tain, it was an absolute nullity, its rejection does not involve such a question; for a proceeding which is an absolute nullity cannot be said to be " an authority exercised under the United States."

This action of Underwood, J., has been passed upon by this court in the case of *Mc Veigh* v. *United States,* in which it is said that the striking from the files the answer of McVeigh if sustained, "would be a blot upon our jurisprudence and civilization, and contrary to the first principles of the social compact and of the right administration of justice."

No stronger language could be well used to show that these proceedings were absolutely null.

The Corporation Court had before it that decision when this case was tried. In charging that the proceedings offered in evidence did not divest McVeigh of his title, did the court deny the validity of " an authority exercised under the United States ?" If the decree of condemnation was, as we have asserted, a nullity, the answer must be in the negative. There must be, say this court in *Millingar* v. *Hartupee,** something more than a bare assertion of such an authority to give jurisdiction under section 709. This court in the case cited thus declares:

" The authority intended by the act is one having a real existence derived from competent governmental power. If a different construction had been intended Congress would doubtless have used fitting words. The act would have given jurisdiction in cases of decisions against *claims of authority under the United States.*"

*Mr. S. F. Beach, contra:*

1. The power of the State courts to correct error in the judgments, if error there was, had been wholly exhausted before the writ of error from this court was applied for. There was no higher court of the State to which the case could be taken for decision. Such being the fact, it matters not how low down in the grade of State courts the judgment may

* 6 Wallace, 261.

have been left.  A writ of error will lie to it from this court as much as if it had been made by the highest court in the State; for, of course, the writ must be directed to the court in which the record of the judgment is. ...No other court could make return to a writ.

It is argued against us that the petition, instead of being presented to the *judges* of the Court of Appeals, might have been presented to the *court* itself, and it is said that their refusal in such case by the court would have been an affirmance of the judgment below, and thus that the decision of the case might have been had in the Court of Appeals.

It by no means follows (if the point were a material one) that such rejection by the court is identical with an affirmance of the judgment below.  That the two are " exactly equivalent" in practical effect may be admitted, but things may be exactly equivalent in practical effect and yet very dissimilar in themselves.

Nor does the case of *The Richmond Railroad Company* v. *The Louisa Railroad Company* establish that a refusal by the court to allow the writ is a formal affirmance of the judgment below.  In that case the manner of directing the writ was not a question raised or considered by this court.  It considered the larger question, whether the power of the State courts had been exhausted so as to give jurisdiction to this court, and the decision of that question did not necessitate an inquiry into the proper manner of directing the writ. What was said by the judge giving the opinion was *dictum* merely.

The Court of Appeals never enters a judgment of affirmance or reversal, except upon a writ of error or supersedeas, issued, executed, and returned.  Until then no case finds place upon its docket.

But, suppose that refusal by the court to allow a writ *is* identical in law with a formal affirmance, what follows? Clearly that if the petition had been presented to and refused by the *court* instead of having been presented to and refused by the *judges*, the writ of error should have been directed to the Court of Appeals, and not to the Corporation

Court; and that is *all* which follows, unless, indeed, the converse may also be said to follow, to wit, that inasmuch as the petition was not so presented and refused, the writ is not improperly directed, when directed to the Corporation Court.

It does not matter *by what method* the power of the State courts has been exhausted. This court concerns itself only about the *fact*, and if the *fact* appears, the manner in which it has been accomplished is immaterial. It is not denied that we have pursued a method provided by law, and the adoption of which barred us from resort to any other method, and if the test of jurisdiction here be as we assert, the *fact*— not the *method*—of the exhaustion of the power of the State courts—not the grade of the court in which the judgment happens to be left when the point of exhaustion is reached— then the argument against us is not well made.

Unless exercised in this way this court cannot, in cases where the practice in matters of appeal is such as exists in Virginia, exercise jurisdiction at all. There is no other court to which the writ could be directed. If the writ, therefore, be dismissed because directed to the Corporation Court, we have a case where a claim of right under Federal law has been denied by a State court—where the party asserting it has exhausted the power of the State courts to reverse the decision—and yet the validity of the claim cannot be passed upon by a Federal court.

2. *A Federal question is involved.*

The action was an action of ejectment, in which the plaintiff in error was defendant. On the trial the defendant proved and offered in evidence the marshal's deed and the record of the sentence of condemnation by which the plaintiff's life estate in the property had been condemned as forfeited to the United States, and prayed the court on that evidence to rule that the plaintiff's life estate was thereby divested. The court refused the prayer. The defendant therefore claimed a right under the statute of the United States, and the decision of the court was adverse to the claim.

Whether that decision was correct or erroneous is not a question material *to this motion*, the appellate *jurisdiction* of this court not depending upon whether the State court de-cided the question correctly, but upon whether it decided the question *adversely* to the party raising it.

The distinction between the cases now before the court and the case of *Millingar* v. *Hartupee* is obvious.

In the latter case jurisdiction in this court was claimed, because of a right asserted under "an authority" of the United States, and there existed no "authority" of the United States under which any such right could be asserted. The jurisdiction was therefore denied, the court saying:

"In respect to the question we are now considering, 'authority' stands upon the same footing with 'treaty' or 'statute.' If a right were claimed under a treaty or statute, and on look-ing into the record it should appear. that no such treaty or statute existed or was in force, it would hardly be insisted that this court could review the decision of a State court, that the right claimed did not exist."

There is no question in the present case as to the exist-ence of the "statute" under which the plaintiffs in error claimed their right, or as to the *fact* of the rendering of the judgment by the District Court and of the marshal's sale and conveyance. The only matter with respect to which a question is made is the legal validity of the judgment, and that is not a question proper to be discussed under this motion.

It is perhaps proper, however, to say that our general proposition in respect to the judgment is, that whilst it may have been or clearly was *erroneous* it was not *void;* that the court which rendered it had jurisdiction to render it, and if so, that a sale made under it carried a valid title to the pur-chasers.

The CHIEF JUSTICE delivered the opinion of the court.

The motion to dismiss this cause for want of jurisdiction is denied.

" A final judgment or decree in any suit, in the highest

court of a State in which a decision in the suit could be had," may in a proper case be re-examined in this court.*

The Court of Appeals is the highest court in the State of Virginia. If a decision of a suit could be had in that court, we must wait for such a decision before we can take jurisdiction, and then can only examine the judgment of that court. If, however, the suit is one of which that court cannot take jurisdiction, we may re-examine the judgment of the highest court which, under laws of the State, could decide it.†

The Court of Appeals has revisory jurisdiction over the judgments of the Corporation Court of the city of Alexandria, but parties are not permitted, in the class of cases to which this belongs, to take such judgments there for review as a matter of right. Leave for that purpose must first be obtained. Two modes of obtaining this leave are provided. One by petition to the Court of Appeals itself, and the other by petition to a judge thereof. If the petition is presented to a judge and he denies it generally, without more, it may be again presented to the court. But if the judge to whom the application is made "shall deem the judgment, &c., plainly right," and reject it on that ground, if the order of rejection shall so state, no other petition shall afterwards be presented to the same purpose.‡ The parties are left free to present their petitions to the court or to a judge thereof, as they may find it most convenient or desirable.

It has long been settled that if a cause cannot be taken to the highest court of a State, except by leave of the court itself, a refusal of the court upon proper application made to grant the leave, is equivalent to a judgment of affirmance, and is such a final judgment as may be made the basis of proceedings under the appellate jurisdiction of this court.§

In the present case the Court of Appeals has now no power to review the judgment of the court below. It can-

---

\* Revised Statutes, § 709.

† Downham *v.* Alexandria, 9 Wallace, 659.

‡ Code of Virginia, 1873, chapter 178, § 10.

§ Railroad Co. *v.* Railroad Co.; 13 Howard, 80.

not even entertain a motion for leave to proceed.   A judg-
ment has been rendered by the highest court of the State in
which a decision can be had.   The Court of Appeals has
never, in fact, had jurisdiction.   A suit cannot be taken
there, except upon leave, and that leave has, in the regular
order of proceeding, been refused in this case.   From this
refusal there can be no appeal.   Everything has been done
that can be to effect the transfer of the cause.   The rejection
of a petition by one judge does not prevent its presentation
to another.   Here the petition has been presented to each
and every one of the judges, and they have all rejected it be-
cause the judgment was "plainly right."   Thus the doors
of the Court of Appeals have been forever closed against the
suit; not through neglect, but in the regular order of pro-
ceeding under the law governing the practice.

We think, therefore, that the judgment of the Corpora-
tion Court of the city of Alexandria is the judgment of
the highest court of the State in which a decision of the
suit could be had, and that we may re-examine it upon
error.

Without stopping to discuss the other question presented
by the motion, it is sufficient to say that we think the case
involves the consideration of a Federal question.   The pro-
ceeding in the District Court was under the authority of the
United States, and its validity is drawn in question.

MOTION DENIED.