### UNITED STATES v. FIFTY BARRELS OF WHISKY.

#### (District Court, D. Maryland. October 26, 1908.)

1. **Food (§ 24\*)—Pure Food Law—Adulteration or Misbranding—Proceeding for Forfeiture.**

   A preliminary examination by the Department of Agriculture of an alleged adulterated or misbranded food or drug product, as provided for by section 4, Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 769 (U. S. Comp. St. Supp. 1907, p. 929), is not a necessary condition precedent to the filing of a libel in rem for the condemnation of such product under section 10 of the act, 34 Stat. 771 (U. S. Comp. St. Supp. 1907, p. 934).

   [Ed. Note.—For other cases, see Food, Cent. Dig. § 17; Dec. Dig. § 24.\*]

2. **Food (§ 24\*)—Pure Food Law—Proceeding for Forfeiture of Misbranded Article—Defenses.**

   In a proceeding by libel by the United States under Food and Drugs Act June 30, 1906, c. 3915, § 10, 34 Stat. 771 (U. S. Comp. St. Supp. 1907, p. 934), for the forfeiture and condemnation of a quantity of distilled spirits shipped in interstate commerce and alleged to have been misbranded contrary to the provisions of said act, it is no defense that the brand was placed upon the packages containing such liquor by the United States gauger upon information received from the distiller in accordance with the usual practice, or that the same kind of liquor had for a number of years been so branded and sold under such brand to the knowledge of the agents and officers of the United States.

   [Ed. Note.—For other cases, see Food, Cent. Dig. § 17; Dec. Dig. § 24.\*]

3. **Estoppel (§ 62\*)—Equitable Estoppel—United States—Acts of Officers or Agents.**

   The United States cannot be estopped to proceed for the violation of a federal statute by the acts of any of its agents.

   [Ed Note.—For other cases, see Estoppel, Cent. Dig. § 152; Dec. Dig. § 62.\*

   As against state or United States. see note to State of Michigan v. Jackson, L. & S. R. Co., 16 C. C. A. 353.]

Libel by the United States for condemnation of alleged whisky for misbranding. On exception to libel, and charge to jury.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This was a libel filed by the United States seeking the condemnation of 50 barrels, more or less, of alleged whisky. The libel charged that the product had been distilled at New Orleans, La., out of molasses, and had been there branded "Bourbon Whisky"; that such branding was a misbranding, in that whisky was a distillate of grain, Bourbon whisky a distillate of fermented mash of a mixture of grains—of which mixture corn constituted the larger part—and that to entitle the product to be called Bourbon whisky it must be distilled in certain localities, particularly in the state of Kentucky, and not in Louisiana. There was no allegation in the libel that there had been any hearing before the Secretary of Agriculture, as prescribed in sections 4 and 5 of Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 769 (U. S. Comp. St. Supp. 1907. pp. 929, 930). The claimants excepted to the sufficiency of the libel because of the absence of this allegation.

John C. Rose, U. S. Atty., and R. M. Allen, Special Asst. U. S. Atty.

Moses R. Walter, for the claimant.

MORRIS, District Judge (overruling this exception, and sustaining the sufficiency of the libel). In this case, which is a libel for the seizure and forfeiture of 50 barrels of distilled spirits alleged to be misbranded contrary to the provisions of the act of Congress of June 30, 1906, the libel does not allege that there had been any preliminary examination such as is provided for by section 4 of the act. The claimant has excepted to the libel upon the ground that the court has no jurisdiction unless such a preliminary examination has preceded the seizure. It is urged that the harshness of the proceeding in seizing goods alleged to be misbranded, without giving the owner the opportunity of being heard as to their true nature, is such that the court should, if possible, construe the law so as to require the examination as a prerequisite to seizure.

Such seizures are not unusual, and it is plain that, if the harshness were conceded, it would not justify the court in reading into the law a limitation which it does not contain. The act provides two different proceedings to enforce its provisions. One is by a criminal proceeding in personam; the other is by a proceeding in rem, by seizure of the offending thing itself, and forfeiture if found to be violative of the law. In this latter case there is no provision for a preliminary examination. Section 10 of the act provides that any article of food, drug, or liquor that is adulterated or misbranded, which is being transported from one state to another, shall be liable to be proceeded against and seized for confiscation by process of libel for condemnation. It is further provided that the proceedings for such libel cases shall conform as near as may be to the proceedings in admiralty, except that either party may demand trial by jury of any issue of fact joined in any such case. The libel alleges that 50 barrels of distilled liquor are now at a named place within the district, having been transported from the city of New Orleans, in Louisiana, to Baltimore, Md., branded "Bourbon Whisky," which brand indicates a liquor containing all the congeneric substances obtained by distillation from a fermented mixture of grain, of which Indian corn forms the chief part, and confined to whisky distilled in the state of Kentucky, and that the 50 barrels of distilled liquor in question, branded "Bourbon Whisky,"

are not whisky at all, but a distillate of molasses distilled in New Orleans, La. The libel then prays that the 50 barrels of liquor may be proceeded against and seized for condemnation, in accordance with the act of Congress approved June 30, 1906, and prays the court to order process of attachment in due process of law, and that all persons having, or pretending to have, any right, title, or claim in said liquor may be cited to appear and answer the premises. This is according to the course of proceeding in libels in admiralty, and in similar proceedings in rem for forfeitures for violation of the internal revenue laws. Such seizures are made in cases in which forfeiture of the goods is the penalty, without preliminary examination or proceedings of any kind, in cases of violation of the customs laws and the shipping regulations, as well as violations of the internal revenue laws.

The exception is overruled.

At the trial it was proved, and not denied, that the spirits libeled had been distilled in New Orleans, La.; that the material from which they had been distilled was the cheaper grade of New Orleans molasses (commonly known as "Blackstrap"); that to each 350 gallons of molasses was added about 1 gallon of sulphuric acid; and that this mixture was further diluted by the addition of 5½ gallons of water to every gallon of molasses.

The libelant produced some 50 or more witnesses, being distillers of rye and Bourbon whiskies, retail liquor dealers, retail grocers, druggists, the chairman of the Revision Committee of the United States Pharmacopœia, physicians, chemists, and food experts, who testified that in their understanding the word "whisky" imported a distillate of grain; that the words "Bourbon Whisky" imported a distillate of mixed grains, of which mixture Indian corn constituted the larger part. Most of these witnesses were further of the opinion that the phrase "Bourbon Whisky" implied that the whisky had been distilled in Kentucky. All the chemical witnesses, on both sides, testified that in the present state of chemical knowledge it is not possible by chemical analysis, alone, certainly to tell whether a given product is brandy from grapes, whisky from grain, or rum from molasses.

The claimant proved that its distillery had always been surveyed and registered as a sweet-mash molasses distillery; that during the six years immediately preceding the seizure, 12,000 barrels of its product were branded and entered as "Bourbon Whisky," and that, out of said 12,000 barrels, 9,000, of which the 50 barrels, more or less, seized were a part, had been withdrawn and sold to various persons as Bourbon whisky; that the said barrels so entered and withdrawn were reported by the claimant and the government storekeeper at the distillery to the collector of the district, by him reported to the Commissioner of Internal Revenue, and by the latter reported in his printed annual reports as entries and withdrawals of Bourbon whisky; that the branding of the words "Bourbon Whisky" had been put on each of the said barrels by the United States gauger in charge of such distillery. The claimant offered the annual reports of the Commissioner of Internal Revenue for the years from 1901 to 1907, inclusive, to prove that during most of these years there had been only one distillery in Louisiana, and that was the claimant's molasses distillery; that no material other than molasses was used for distillation in that district, and that these reports did not show that any rum had been distilled in the district of Louisiana. The claimant further offered said reports to show that for many years next preceding the seizure the records of the Internal Revenue Department purport to show that Bourbon whisky had been produced in some 10 states other than in Kentucky. These reports, in this respect, show that more than 90 per cent. of all the whisky branded "Bourbon Whisky" produced in this country was produced in Kentucky, and that the larger part of the small percentage not produced in Kentucky was produced in states immediately bordering on Kentucky. The claimant further offered chemical evidence to the effect that whenever starch, malted cereal, cane sugar, or grape sugar are subjected to the ordinary processes

preliminary to fermentation a common sugar is derived from them. So that, while there are chemical differences in the mash, depending on the material out of which the mash is made, a large part of such mash in each case consists of a sugar common to all. The claimant further offered chemical testimony to the effect that the character and kind and race of the yeast used in fermentation has an important effect upon secondary products and upon the flavor of the finished product; that a large part of the distinction in the aroma between American whiskies on the one hand, and Scotch and Irish whiskies on the other, is due to the circumstance that American whiskies are aged in charred barrels; that such improvement in the flavor of whisky in charred packages as takes place after the fourth year is due largely to concentration, and the oily appearance of matured whisky is due to material extracted from the charred packages, and that the body of whisky, so called, is due largely to the solids extracted from the wood. The claimant further offered evidence to the effect that sulphuric acid is used to invert the sucrose, so that fermentation can be accelerated, and ammonia is used as a yeast food; that there were no poisonous or deleterious substances in the whisky seized, and that chemical analysis showed that no sulphuric acid or ammonia remained in the whisky seized, those substances having been eliminated in the process of distillation.

The libelant proved in rebuttal that the gauger who branded the barrels in this case "Bourbon Whisky" received his information that the contents of the barrels were Bourbon whisky from the distiller, and that many gaugers in the service in other districts had habitually acted upon such information in determining what was the name, known to the trade, by which each package of distilled spirits should be branded. The government further proved that once a month the distiller made a sworn return of the quantites and kinds of spirits distilled by him, giving to each class of them the name by which he asserted they were known in the trade, and further proved an internal revenue regulation which provides that, as to the kind of spirits produced, the gauger should see that his returns agreed with those made by the distiller, and that the tables in the annual reports of the Internal Revenue Department read in evidence by the respondents were simply compilations of these distillers' monthly reports. The government offered evidence of a chemical expert, who has made a special study of fermentation and distillation, to the effect that it is not necessary to use sulphuric acid in distilling molasses for the purpose of accelerating fermentation; that he had made accurate experiments to determine whether the addition of sulphuric acid to the mash would increase the rate of fermentation, and the result of the experiment was to show that the addition of sulphuric acid made no difference either in the rate at which the sugar was inverted, as determined by examinations with the polariscope, or in the rate at which the sugar was fermented, as determined by the study of the rate at which the specific gravity of the liquid diminished; that there may at times be a very good reason for the use of sulphuric acid, and that is to check the multiplication of foreign ferments or acetic acid bacteria. A good many different antiseptic materials have been used for such purposes. Of these sulphuric acid is one, and it is also about the cheapest, and about as readily obtained as any.

Another way of preventing the existence of these false ferments is to keep the distillery clean.

The libelant offered three prayers and the respondent one prayer, which latter was as follows:

"The Louisiana Distillery Company, the claimant in this case, prays the court to instruct the jury that a portion of the product of its distillery, including therein the 50 barrels, more or less, seized in these proceedings, having been branded by the United States gauger, from time to time, during the seven years preceding the seizure herein, as 'Bourbon Whisky,' and having during that period been as 'Bourbon Whisky' entered in bond in the United States bonded warehouses of said claimant, the entries thereof reported as 'Bourbon Whisky' to the internal revenue collector in the district of Louisiana, and having been reported as 'Bourbon Whisky' to the Commissioner of Internal Revenue, and portions thereof, as shown by the evidence in the case, having been withdrawn from said bonded warehouses as 'Bourbon

Whisky,' and the said withdrawals having been reported as 'Bourbon Whisky' to the said collector, and by him reported to the Commissioner of Internal Revenue as 'Bourbon Whisky,' and the taxes on all said withdrawals having been paid to the United States government, and the said Commissioner of Internal Revenue having full knowledge during all this time that the said distillery was surveyed as a sweet-mash molasses distillery, and that molasses and not grain was used therein for the distillation of its spirits, and that the product thereof was during said period of seven years branded 'Bourbon Whisky,' and that the entries and withdrawals thereof were as 'Bourbon Whisky' and the taxes thereon paid as such, then the libelant is estopped from claiming that the contents of the said 50 barrels of whisky, more or less, were or are other than 'Bourbon Whisky,' and their verdict must be for the Louisiana Distillery Company."

MORRIS, District Judge (charging the jury). I will not call upon counsel for the United States to reply. The case as it is presented to the jury is a very clear one. I reject the only prayer offered by the defense. Really, that prayer concedes the misbranding of the liquor, and asks me to say to the jury that if they find that this was done under the control and by the agents of the United States, the United States, which is the plaintiff in this case, is estopped from proceeding to condemn these goods and forfeit the goods for misbranding. That proposition I reject. Every one who deals with agents of the United States deals with them with the knowledge imputed to him of the restriction upon their authority. It seems to me it cannot be successfully contended that any agent of the United States has authority to do a thing which is forbidden by law; and it is forbidden by this law passed in 1906, the pure food law, to misbrand any goods which are intended to be, or are actually, transported from one state to another. Of course, the gentlemen of the jury know, or should know, that the United States has no authority, under the Constitution of the United States, to forbid the manufacture and the sale of goods within the limits of a state. It is only when they are transported from one state to another, and become a part of interstate commerce of the country, that the United States has the authority to pass laws regulating them. So this liquor, without infraction of any law so far as I know, might have been offered for sale and sold in Louisiana, unless there is some law of Louisiana which prohibits the misbranding of or misrepresentation with regard to the constituents of an article that is offered for sale. It is only, therefore, when these goods become a part of the interstate commerce of the country that the pure food law of 1906 applies to them. That law provides that "misbranding" shall be the placing on the package of any statement which shall be false or misleading in any particular, and provides that any article misbranded, which is transported from one state to another for sale, is liable to confiscation. Therefore I do not think that anything that was done in the distillery in Louisiana, in New Orleans, in any way estops the United States or estops the authorities, or the agents of the United States in Maryland, from proceeding to condemn these goods upon the ground that they were misbranded. It would be destructive of the enforcement of many of the laws of the United States if the act of any agent of the United States could be set up as a de-

fense against the explicit law; the explicit law in this case being that any goods that are misbranded shall be forfeited. If any gauger, at the request of a distiller or under a generally understood practice of the distillery, should misbrand an article of distilled liquor, it would be utterly subversive of the law, if the act of the gauger could be a defense to the positive enactment of the act of 1906 which forbids misbranding goods that are to be transported from one state to another. I therefore reject that contention on behalf of the claimant of the goods in this case.

The real issue which the jury are to determine is whether these goods are whisky as known to the trade and to the community generally, and to those who deal in whisky. If it is not whisky, the case is made out in favor of the United States. If the jury believes—and there is a great deal of testimony to that effect—that the word "whisky" is applied only to a distillate made of grain, that is an end of the defense in this case. If they so find, their verdict must be for the United States, because it is admitted in this case, and it is not a matter of dispute, that this liquor is not made from grain, but is a distillate of molasses with a slight infusion of sulphuric acid.

But the jury might possibly find that it could be called "whisky." Then there is a second question, can it be called "Bourbon Whisky"? There is a great deal of testimony to show that Bourbon whisky, in its most general sense, is a whisky made from grain of which corn is the larger constituent. If you find that this was not such a whisky, then it is not Bourbon whisky, and your verdict must be for the United States.

Then there is testimony also to the effect that Bourbon whisky, as understood in the trade, is confined to a whisky made in Kentucky. If you find that to be the fact—and that is for you, entirely, on the testimony—if you find that in the trade, and among those who deal in and who are familiar with the article, Bourbon whisky implies that it is made in Kentucky, then of course that is an end of the case so far as the claimant is concerned, because it is admitted that this liquor was made in New Orleans.

A good deal has been said about the hardship and injustice of condemning an article which once has been branded by the gauger, but I do not think that that appeals very strongly to any one's sense of morality, because a gauger is not a man who is to decide what is the trade-name of an article. He takes that largely from the distiller. He is not a dealer in liquor, nor is he a man of science who is to determine once for all, and incontrovertibly, whether it is what it is branded, or something else.

I will now give you the instructions asked for by counsel for the United States. The first prayer is as follows:

"The jury are instructed that if from the evidence they shall find that the word 'whisky,' as understood by scientific men, the liquor trade, and by the public generally, is confined to a distillate of grain, and shall further find that the contents of the barrels libeled in this case are a distillate of molasses, and that the said barrels were branded 'Bourbon Whisky,' then the said barrels were misbranded, and their verdict must be for the libelant."

The second prayer has reference to the restricted meaning of "Bourbon Whisky," as applying to whisky distilled in the state of Kentucky. It is as follows:

"The jury are instructed that if they shall find from the evidence in this case that the phrase 'Bourbon Whisky,' as defined in the standard works of reference in use in this country, and as understood by scientific men, the liquor trade, and by the public generally, imports a liquor distilled in the state of Kentucky, and shall further find that the contents of the barrels libeled in this case were distilled at New Orleans in the state of Louisiana, and shall further find that the said barrels were branded 'Bourbon Whisky,' then the barrels were misbranded, and their verdict must be for the libelant."

The third prayer has reference to what you may find from the evidence is the more general acceptation of the words "Bourbon Whisky," in case you find that the words do not necessarily require that it shall be made in Kentucky. The instruction is as follows:

"The jury are instructed that if they shall find from the evidence that the phrase 'Bourbon Whisky,' as understood by scientific men, the liquor trade, and the public generally, is confined to a distillate of grain made from the mixture of fermented grain, of which mixture corn constituted the greater part, and shall find that the contents of the barrels libeled in this case are a distillate of molasses, and shall further find that the said barrels are branded 'Bourbon Whisky,' then the said barrels are misbranded, and their verdict must be for the libelant."[1]

I do not think there is anything further that I need say to the jury, except to remind you that there is no dispute at all as to the material out of which this distillate was made. The whole case, in my judgment, and I so instruct you, turns upon whether the general acceptation of the word "whisky" means that it is made from grain. Of course, this liquor was not so made.

Further, in regard to Bourbon whisky, if the term "Bourbon Whisky" implies that the article was made of corn in greater part—not made of molasses, but made of grain of which corn was the greater part—then, of course, it was misbranded.

So, further, if you find that Bourbon whisky is confined to whisky made in Kentucky, and of grain, and that the larger constituent part must be corn, then, of course, this would not be Bourbon whisky, because it was not so made.

As to what the testimony has proved to your satisfaction are the proper meanings, accepted by the trade and by scientific men, of "whisky" and "Bourbon Whisky," those are facts to be found by you from the testimony, which I leave entirely to you. It is my duty to instruct you upon the law, and to leave the facts to be found by you.

The verdict was "for the libelant."