**UNITED STATES, to Use of STALLINGS, et al. v. STARR et al.**

Circuit Court of Appeals, Fourth Circuit.
July 5, 1927.

No. 2586.

**1. United States ⟨⟩67(2)—Barge contractors' performance bond given United States held not to cover claims of laborers and materialmen (Hurd Act, amending Act Aug. 13, 1894 [Comp. St. § 6923]).**

Performance bond, given by barge contractors to the United States pursuant to contract requiring bond "conditioned on the full and complete performance of the contractors under and in accordance with the terms of this contract," held not to cover claims of laborers and materialmen, notwithstanding Hurd Act, amending Act Aug. 13, 1894 (Comp. St. § 6923), requiring that bond given for performance of contract shall contain an obligation guaranteeing payment of such claims.

**2. Courts ⟨⟩372(4)—Laborers' and materialmen's rights under barge contractors' performance bond given United States held determinable according to law as declared by federal courts.**

Rights of laborers and materialmen under barge contractors' performance bond given the United States are to be determined in the light of the law as declared by federal courts.

**3. Bonds ⟨⟩50—Under North Carolina law, mere statutory requirement that bond contain particular obligation does not incorporate it therein.**

Under law of North Carolina, the mere requirement of a statute that a bond contain an obligation does not of itself incorporate the obligation in the bond.

**4. Bonds ⟨⟩50—Statutory provision that bond shall protect claims of laborers and materialmen, whether such provision be incorporated in bond, or not, will be given effect.**

A statutory provision that a bond given thereunder shall protect the claims of laborers and materialmen, whether such provision be incorporated in the bond or not, will be given effect.

**5. United States ⟨⟩67(2)—Bond guaranteeing under contract to build barges at contractors' "own risk and expense" held not to cover laborers' and materialmen's claims, on theory that payment thereof was part of performance.**

Barge contractors' performance bond, given pursuant to contract requiring contractors "at their own risk and expense" to construct barges involved, held not to make surety liable for laborers' and materialmen's claim, on theory that payment thereof was one of contractors' duties under contract.

**6. United States ⟨⟩67(3)—Finding that action on government contractors' bond was not instituted within 12 months of final settlement held supported by evidence.**

Finding of trial judge that action on government contractors' bond was not instituted within 12 months of final settlement held supported by evidence.

**7. Appeal and error ⟨⟩1008(2)—Where jury is waived, findings of court, supported by substantial evidence, are binding on appeal.**

Where jury is waived, trial court's findings have force and effect of verdict of jury, and are binding on appellate court, if supported by any substantial evidence.

**8. United States ⟨⟩67(3)—"Final settlement," as affects time for suit on government contractors' bond, means final determination by governmental authority of amount government owes or is entitled to.**

"Final settlement," as affects time of institution of suit on government contractors' bond, does not mean an agreement between the contractor and proper government official adjusting the balance due, nor does it mean payment of balance due under contract, but rather the final determination by the proper governmental authority of the amount which the gov-

ernment is finally bound to pay or entitled to receive under contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Settlement.]

**9. United States ⊙⟶67(3)—Final settlement between government and contractor may have been made, notwithstanding balance due may be subject to change.**

There may be a final settlement between government and contractor, so as to fix rights of creditor under statute, notwithstanding balance found to be due may be subject to change.

**10. Appeal and error ⊙⟶1033(10)—Plaintiffs held not entitled to complain of order of Judge setting aside order of predecessor containing conclusions of law favorable to plaintiffs.**

In materialmen's action on government contractors' bond where judge entered order setting forth certain conclusions of law, referred case to auditor, settled bill of exceptions relating to matters which had occurred up to that time, and died before auditor reported, and where his successor set aside the order containing the conclusions of law, and with the consent of all parties granted new trial, held, plaintiffs, on review of adverse judgment, could not complain of order setting aside order of first judge containing conclusions favorable to them, in view of their failure to except and consent to procedure followed.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Newbern; Isaac M. Meekins, Judge.

Action by the United States, to the use of Robert L. Stallings, trading as Stallings Bros., against Edward I. Starr and another, trading as Starr & Bennett, and others, wherein the Air Reduction Steel Company and others intervened. Judgment for defendants, and plaintiff and interveners bring error. Affirmed.

Hugh H. Obear, of Washington, D. C., and R. E. Whitehurst, of Newbern, N. C. (A. D. Ward and Whitehurst & Barden, all of Newbern, N. C., Douglas, Obear & Douglas, of Washington, D. C., and Ward & Ward, of Newbern, N. C., on the brief), for plaintiffs in error.

Larry I. Moore, of Newbern, N. C., and Bynum E. Hinton, of Washington, D. C., for defendants in error.

Before WADDILL and PARKER, Circuit Judges, and BAKER, District Judge.

PARKER, Circuit Judge. Starr & Bennett, hereinafter called contractors, on February 27, 1919, entered into a contract with the Director General of Railroads of the United States for the construction of four steel barges, and gave bond, with the Globe Indemnity Company as surety, for the faithful performance of the contract. This is an action instituted on the bond by Stallings Bros., as relators, to recover for materials furnished to the contractors. Sundry other furnishers of materials have intervened and been made parties to the action. In the court below a jury trial was duly waived by written stipulation, and the trial judge found the facts and rendered judgment in favor of the surety. By the exceptions to this judgment two questions are presented: (1) Whether the bond sued on covers the claims of laborers and materialmen; and (2) whether the action was instituted within 12 months of final settlement, as required by statute.

On the first question, it appears that the bond contained no provision obligating the surety to pay for labor or materials. The bond by reference incorporates the contract, but the contract contains no such obligation. The first paragraph of the contract provides that the contractors "at their own risk and expense" shall construct the barges contracted for, and shall furnish acceptable bond in the sum of $83,550, "conditioned upon the full and complete performance of the contractors under and in accordance with the terms of this contract." By a subsequent paragraph, the contractors agree to procure and keep in force "all such bond or bonds for the protection of claims and/or liens by laborers and/or materialmen, as may be required by the laws of the United States." It appears, however, that no such bond was given.

On the second question, the record shows that the action was instituted October 11, 1922. Judge Meekins found that on October 4, 1921, the barges had been completed, delivered, and accepted, and that on that date there was made by the proper government department and rendered to the contractors and their receiver a statement of the account under the contract, administratively determining the balance due to be $23,864.30; that on the same date the government issued and forwarded its voucher to the receiver of the contractors for the sum of $22,500, leaving a balance of $1,364.30 to be thereafter paid; and that the amount so determined was not thereafter changed, but was accepted as final payment of the balance due under the contract.

There was evidence to support this finding of the trial judge. The record shows that on October 4, 1921, the chief of the Inland and Coastwise Waterways Service of the

War Department, whose duty it was to make settlement under the contract, sent a letter to the receiver of the contractors, inclosing a statement of account, and showing that the government owed a balance to the contractors of $23,864.30. The letter was as follows:

"There is inclosed for your certification voucher R–337 covering proposed payment on contract NYCS–11 between the Director General of Railroads and Starr & Bennett. Please sign the voucher at point indicated by 'X' and return to this office, when check in the amount of $22,500 will be forwarded in accordance with the wording of the voucher.

"For your information there is inclosed statement of the account between the Director General of Railroads and Starr & Bennett as it appears on the books of the Inland and Coastwise Waterways Service as of October 3, 1921. It is believed that the statement is complete and includes all credits and charges. However, it is possible that additional charges will be discovered, as a number of small items have recently been reported by outside auditors who have just completed checking the accounts of the New York Canal section. Any change in the statement will be reported to you."

With the letter and statement went a voucher for $22,500, with the notations, "Payment on account of contract, * * *" and "This does not represent a complete settlement of balance due on the above contract." The voucher for the $1,364.30 was sent to the receiver some time prior to February 7, 1922, exactly when does not appear, but on that date the receiver petitioned the superior court, by which he had been appointed, for authority to accept the voucher. The authority was granted, the receiver certified the voucher as correct, and on February 15, 1922, it was approved by the proper official of the War Department and paid by check of that date. It contained, among other things, the following notation:

"Final settlement on account NYCS No. 11. This payment represents the amount found due under contract, * * * and it is further agreed that this is a final payment and full and complete settlement of all disputed claims and all claims and demands * * * of every kind and character which the said Starr & Bennett has or may have against the United States, the Secretary of War, or the Director General of Railroads in any wise connected with or growing out of the contract, upon which this payment is made."

[1] We think that the learned District Judge was correct in holding that the bond in suit did not cover the claims of laborers and materialmen. It is true that on a contract such as this, the Hurd Act (Act Feb. 24, 1905, amending Act Aug. 13, 1894, 28 Stat. 278, 33 Stat. 811, U. S. Comp. Stat. § 6923), requires that the bond given for the performance of the contract shall contain an obligation guaranteeing the payment of such claims. But this requirement of the statute does not authorize a recovery by laborers and materialmen, where neither the bond itself nor the contract contains such obligation. Babcock & Wilcox v. American Surety Co. (C. C. A. 8th) 236 F. 340; U. S. v. Montgomery Heating & Ventilating Co. (C. C. A. 5th) 255 F. 683; U. S. v. Stewart (C. C. A. 8th) 288 F. 187; U. S., to use of Zambetti, v. American Fence Construction Co. (C. C. A.) 15 F.(2d) 450.

[2, 3] Of course, the rights of the parties in this case are to be determined in the light of the law as declared by the federal courts; but, as the bond here considered was given within the state of North Carolina, it is worth while to note that the rule followed by the federal courts is the same as the rule followed by the courts of that state. Warner v. Halyburton, 187 N. C. 414, 121 S. E. 756; Ideal Brick Co. v. Gentry, 191 N. C. 636, 132 S. E. 800; Page Trust Co. v. Carolina Construction Co., 191 N. C. 664, 132 S. E. 804. Under the law of North Carolina, the mere requirement of the statute that a bond contain an obligation does not of itself incorporate the obligation in the bond; for, as said by Chief Justice Stacy in Ideal Brick Co. v. Gentry, supra:

"It is a principle too well established to require the citation of authorities that, 'as a party consents to bind himself, so shall he be bound.'"

[4] A statutory provision that a bond given under the statute shall protect the claims of laborers and materialmen, whether such provision be incorporated in the bond or not, will be given effect. See Standard Electric Time Co. v. Fidelity & Deposit Co. of Maryland, 191 N. C. 653, 132 S. E. 808, construing chapter 100, Public Laws N. C. 1923. But, in the absence of some such statutory provision, the courts will not read into a bond an obligation which it does not contain.

It is insisted, however, that the bond is obligated to laborers and materialmen because the contract provides that the contractors shall furnish a bond for their protection as required by the laws of the United States. But the trouble is that the contractors did not furnish such bond. The same point was in-

volved in the case of Babcock & Wilcox v. American Surety Co., supra, in which Judge Carland, speaking for the Circuit Court of Appeals of the Eighth Circuit, in denying the contention, said (236 F. 342, 343):

"When all is said the case is simply this: That Opdhal by his contract agreed to give a bond obligating himself to pay the claims of materialmen, but he failed to give any such bond. The surety company signed the bond which was executed, and no other. The bond itself did not provide for the payment of materialmen, nor did the contract contain any such provision. The case is not difficult, unless we try to make it different from what it really is."

To the same effect are U. S. v. Stewart, supra, and U. S., to the use of Zambetti, v. American Fence Construction Co., supra, in the latter of which cases the Circuit Court of Appeals for the Second Circuit treated the question as too well settled to permit of discussion.

[5] Counsel for plaintiffs in error strenuously contend, however, that the provision of the contract that the contractors shall "at their own risk and expense" construct the barges is in effect an obligation imposing upon the contractors the duty to pay for labor and materials supplied them, and that, as the bond guarantees the performance of this as well as other provisions of the contract, recovery may be had thereunder. Without questioning for a moment the rule that laborers and materialmen may recover under the bond where the contract obligates the contractor to pay claims for labor and materials, we do not think that the provision of the contract relied on has that effect. Exactly the same question was before the Supreme Court of North Carolina in Warner v. Halyburton, supra, and what was said by Mr. Justice Hoke, speaking for the court in that case, is pertinent here:

"The contract in question provides that the Construction Company shall build and complete the schoolhouse at Apex, N. C., providing all the materials, etc., therefor at their own expense, at the price of $58,083. There is no stipulation in the agreement that the contractor shall pay either the laborers or the materialmen, and a perusal of the instruments throughout will show that they are merely designed to secure the satisfactory and proper completion of a turnkey job, so far as the municipality is concerned, and that no interest ultra is provided for or contemplated."

In the Babcock & Wilcox and Stewart Cases, supra, the contracts required the con-

tractors to "furnish" the materials, and in both cases the Circuit Court of Appeals for the Eighth Circuit held that the obligation to furnish was not an obligation to pay for material that might be furnished, and denied the right of recovery under the bond. The same holding was made by the Supreme Court of Indiana in Greenfield Lumber & Ice Co. v. Parker, 159 Ind. 571, 65 N. E. 747, where the contract provided that the contractor "at his own proper cost and charges" should provide labor and materials. These decisions seem to be in harmony with the weight of authority. City of Sterling v. Wolf, 163 Ill. 467, 45 N. E. 218; Green Bay Lumber Co. v. Independent School Dist., 121 Iowa, 663, 97 N. W. 72; Fellows v. Kreutz, 189 Mo. App. 547, 176 S. W. 1080; Puget Sound Brick, etc., Co. v. School Dist., 12 Wash. 118, 40 P. 608; note to Ann. Cas. 1916A, 759.

The cases of Peake v. U. S., 16 App. D. C. 415, and Speir v. U. S., 31 App. D. C. 476, are distinguished from the case at bar, in that in those cases the promise to pay laborers and materialmen was inserted in the contract. U. S., to use of Zambetti, v. American Fence Const. Co., supra; Babcock & Wilcox et al. v. American Surety Co., supra. And the same distinction exists as to the case of Hartford Accident & Indemnity Co. v. Board of Education, 15 F.(2d) 317, decided by this court, which construed a bond given under a statute of West Virginia.

[6-8] On the question whether the action was instituted within 12 months of final settlement, we have the finding of the District Judge that it was not so instituted, but that there was an administrative determination of the amount due more than 12 months beforehand. A jury trial having been waived, this finding has the force and effect of the verdict of a jury, and is binding upon this court if there is any substantial evidence to support it. George A. Fuller Co. v. Brown (C. C. A. 4th) 15 F.(2d) 672. We think that it is supported by such evidence. The letter of October 4th, quoted above, accompanied by the statement of account showing a balance due the contractors, was certainly evidence of such a final settlement as is contemplated by the statute. Final settlement as there used does not mean an agreement between the contractor and the proper government official adjusting the balance due, nor does it mean payment of the balance due under the contract. It means the final determination by the proper governmental authority of the amount which the government is finally bound to pay or entitled to receive under the con-

tract. Illinois Surety Co. v. Peeler, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609; Arnold v. U. S. (C. C. A. 4th) 280 F. 338; U. S., to use of Union Gas Engine Co., v. Newport Shipbuilding Corporation (C. C. A. 4th) 18 F.(2d) 556. As said by the Circuit Court of Appeals for the Second Circuit in U. S. ex rel. Brown-Ketcham Iron Works v. Robinson, 214 F. 38:

"In determining the time when materialmen may begin suit, it would not do to fix it at some day 'after complete performance' merely. Defective work, damages for delay, and other matters might give the United States some claim which it might not decide to prosecute until some time after the work was turned over, apparently complete. The date was, therefore, fixed relatively to 'complete performance of the contract and *final settlement thereof.*' We take it that these italicized words refer to the time when the proper government officer, who has the final discretion in such matters, after examination of the facts, satisfies himself that the government will accept the work, as it is, without making any claim against the contractor for unfinished or imperfect work, damages for delay or what not, and records that decision in some orderly way."

[9] We do not think that the statement in the letter of October 4th, that additional charges might be discovered, and that any change in the statement would be reported to the contractors or their receiver, precluded that letter and the accompanying statement being considered a final settlement within the meaning of the act. There may be a final settlement between the government and the contractor, so as to fix the rights of the creditor under the statute, notwithstanding the balance may be subject to change; for, when the government has clearly indicated that it has no further claim against the surety, a final settlement within the purview of the act has taken place. U. S. v. Title Guaranty & Surety Co. (C. C. A. 7th) 254 F. 958; Robinson v. U. S. (C. C. A. 2d) 251 F. 461.

The fact that the voucher for final payment was approved February 15, 1922, and that it contained the statement that it was final payment and full and complete settlement of all disputed claims, etc., is not inconsistent with the finding that on October 4th prior thereto there was a final settlement within the meaning of the statute—i. e., an administrative determination of the balance due the contractor—and that the government would not itself look to the bond. As appears from the Union Gas Engine Case,

supra, the word "settlement" is used to convey different meanings even by officials of the government, and it is clear that, as used on the voucher, it referred, not to the administrative determination contemplated by the statute, but to final payment and the consequent extinguishment of "all claims and demands" of the contractors and their receiver. We cannot say, therefore, either that the finding of the trial judge is not supported by substantial evidence, or that any of the admitted facts are inconsistent therewith, and the exceptions thereto must be overruled.

[10] This disposes of the case upon the merits. It was urged, however, that the trial judge erred in setting aside an order of his predecessor, Judge Connor, which decided certain questions of law in favor of plaintiffs and interveners. In this connection it appears that at the inception of the case the parties filed a stipulation waiving a jury trial and agreeing that Judge Connor hear the evidence and find the facts bearing upon the right of plaintiffs and interveners to recover. Under this stipulation Judge Connor proceeded to hear the evidence and to enter an order setting forth certain conclusions of law and referring the case to an auditor to determine the nature, amount, and date of filing of the various claims. He did not, however, find the facts as provided in the stipulation, nor did he render any judgment in the case. At the time of the reference, as is the custom in North Carolina, he settled the bills of exceptions relating to matters which had occurred up to that time. He died before the auditor made his report.

After the appointment of Judge Meekins, defendant moved for a new trial on the ground that Judge Connor had not made a finding of facts in accordance with the stipulation, and that upon the existing record judgment could not be rendered which would give the parties a just and fair determination of the matters pending. Judge Meekins, being of opinion that the findings of Judge Connor had not been completed, and that a new trial was necessary to the doing of justice in the case, granted the motion and proceeded to hear the case de novo. The plaintiffs and interveners did not at the time object or except to this action of the judge, but, on the contrary, gave their consent that he hear the evidence and pass upon their rights, and this consent was incorporated as one of the terms of the order granting the new trial. Not until later did they attempt to except to the order.

It is perfectly evident that, although

Judge Connor settled the bills of exceptions as to matters occurring prior to the order of reference, he had not completed the determination of the matters submitted to him under the stipulation of the parties. No judgment had been entered determining what any of the claimants was entitled to recover or what the defendant was bound to pay. Before this could be done, further action on the part of the judge was necessary. Judge Meekins evidently was not satisfied with the legal conclusions of Judge Connor and was unwilling to enter judgment in accordance therewith. Upon the motion of defendant for a new trial, and with the consent of all parties that the whole matter be heard by him, he proceeded to hear the case de novo, and thereupon defendant abandoned further procedure with respect to the exceptions which it had reserved. Without passing upon whether the order of Judge Connor was not merely an interlocutory one, which could be set aside at any time before final judgment (see 33 C. J. 1061 et seq.; Gas & Electric Securities Co. v. Manhatten & Queen's Traction Corporation [C. C. A. 2d] 266 F. 625; Fourniquet v. Perkins, 16 How. [57 U. S.] 82, 85, 14 L. Ed. 854; Dangerfield v. Caldwell [C. C. A. 4th] 151 F. 554), or whether the granting of a new trial was not a matter within the discretion of Judge Meekins under the Act of June 5, 1900 (31 Stat. 270 [Comp. St. § 1590]), we do not think that plaintiffs are in a position to raise any questions with regard thereto, in view of their failure to except at the time and of their consent given to the procedure before Judge Meekins, resulting in defendant's abandonment of its exceptions taken before Judge Connor. See 3 C. J. 952; Board of Com'rs of City & County of Denver v. Home Savings Bank (C. C. A. 8th) 200 F. 28.

There was no error, and the judgment of the District Court is affirmed.

Affirmed.