**UNITED STATES for Use and Benefit of HUTCHENS v. BATSON–COOK CO., Inc., et al.**

**No. 5597.**

District Court, E. D. Virginia.

July 6, 1933.

Montague & Holt, of Hampton, Va., for H. F. Hutchens and various intervening petitioners.

Kelsey & Jett, of Norfolk, Va., for Moon Engineering Co.

Smith & Smith, of Norfolk, Va., for Seaboard Supply Co.

Williams, Loyall & Taylor, of Norfolk, Va., for Home Indemnity Co.

Wallerstein, Goode & Evans, of Richmond, Va., Swink & Fentress and W. Shepherd Drewry, Esquire, all of Norfolk, Va., and Lett, Murray & Ford, of Newport News, Va., for other intervening petitioners.

WAY, District Judge (after stating the facts as above).

I have reached the conclusion that the demurrer of defendant, Home Indemnity Company, should be sustained.

■ It seems to me that neither the original plaintiff nor any intervenor has any right under the re-insurance agreement, which is designated, *"Re-insurance Agreement in Favor of the United States,"* but rather that said agreement was given and accepted solely for the purpose of guaranteeing and indemnifying the United States in its own right against loss under the *"Standard Government Form of Performance Bond"* furnished by the Southern Surety Company. The "Performance Bond" guarantees: First: The full and faithful performance by the contractor, Batson-Cook Company, of the construction contract and all duly authorized modifications thereof, which guarantee runs solely to the United States in its own right; and, Second: That the contractor shall promptly make payment to all persons supplying labor and materials in the construction of the work provided for in the contract and any authorized extension or modification thereof. And the contract, page 6, article 17, provides:

"Additional security.—Should any surety upon the bond for the performance of this contract become unacceptable to the Government, the contractor must promptly furnish such additional security as may be required from time to time to protect the interests of the Government and of persons supplying labor or materials in the prosecution of the work contemplated by the contract."

■ However, the mere provision in the contract that the contractor could be required from time to time to furnish additional security to protect both the interests of the government and of persons furnishing labor and materials as contemplated by the contract, is not sufficient in itself to incorporate such a provision in favor of labor and materials in the re-insurance agreement. See U. S., to the use of Stallings, et al. v. Starr, et al., (C.C.A.4th) 20 F.(2d) 803. That the government under the provision of the contract above referred to, could have required from the contractor security in addition to that given by the Southern Surety Company for both purposes, is clear, but that it failed to require additional security except for its own protection, is I think equally clear.

The re-insurance agreement here sued on does not undertake to guarantee full and faithful performance of the "Performance Bond" given by the Southern Surety Company, and, consequently, of the obligations of the contract which that bond was given to secure, but is limited to guaranteeing and indemnifying the United States against loss under said performance bond. That is what the parties to the re-insurance agreement have said is its purpose and intent. By this I refer to that provision in the re-insurance agreement following both the recitals and contractual engagements, which provision reads as follows:

"It being *the purpose and intent hereof to guarantee and indemnify the United States against loss under said bond of Batson-Cook Company,* as principal, to the extent of One Hundred Forty Thousand One Hundred Fifty-four and 25/100 dollars ($140,154.25), or for any less sum than One Hundred Forty Thousand One Hundred Fifty-four and 25/100 dollars ($140,154.25) that may be owing and unpaid by the said Southern Surety Company of New York to the United States." (Italics supplied.)

It will be observed that no reference is made in the re-insurance agreement to any intention or purpose to indemnify or guarantee persons furnishing labor or materials in the proposed public work, nor is such a purpose or intent reasonably to be implied from the express provisions. On the whole, it seems to me that the only reasonable interpretation which can be given to the re-insurance agreement is that it guarantees to the United States in its own right, the solvency of the Southern Surety Company of New York to the extent of not exceeding $140,154.25, and that it does not, either expressly or impliedly, undertake to guarantee the faithful performance and observance of all of the obligations of the "Performance Bond," designated in the act of Congress as the "usual penal bond," given by the Southern Surety Company, among which obligations is the obligation to pay labor and materials claims.

It is not deemed necessary to discuss the other grounds relied on by defendant in its demurrer. An order in accordance with the views above expressed will be entered upon presentation.