**UNITED STATES v. KING & HOWE, Inc.,**
et al. (two cases).
Nos. 296, 297.

Circuit Court of Appeals, Second Circuit.
July 15, 1935.

Olvany, Eisner & Donnelly, of New York City (Samuel Michelman and Oscar Igstaedter, both of New York City, of counsel), for appellant.

Martin Conboy, U. S. Atty., of New York City (David W. Wainhouse, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

These two actions were tried together upon stipulated facts before a jury of one which was directed to return a verdict for the plaintiff.

Both actions are upon the same bond and each deals with an importation of stramonium herbs in bales. Upon arrival these herbs were delivered by the collector of customs to the importer, King & Howe, Inc., under a term entry bond executed by the importer as principal and Royal Indemnity Company as surety. The complaints allege that the herbs were imported under a name recognized in the United States Pharmacopoeia and were found, upon an examination of samples, to vary from the Pharmacopoeia standard. Because of noncompliance in this respect with the provisions of the Food and Drugs Act (21 USCA § 1 et seq.), the importer was instructed to destroy or export the herbs within three months, and on failure to do so was notified to return them to customs custody. The importer failed to redeliver them to customs custody and thereby incurred, it is charged, a penalty of a sum equal to the invoice value of the merchandise plus duty thereon. To recover

this sum suit was brought upon the bond. The appellant disputes that there was noncompliance with the Food and Drugs Act and contends also that there was no breach of the bond because its terms did not require a redelivery of the merchandise to the collector upon his demand.

Before proceeding to the merits of the controversy it is necessary to consider a question of appellate jurisdiction suggested, but not argued, by the appellee. Such a question must be decided even though the parties do not press it. The judgment was joint against principal and surety, but the surety alone appealed. This would be a fatal defect unless there was a summons and severance or something equivalent thereto. Hartford Accident & Indemnity Co. v. Bunn, 285 U. S. 169, 52 S. Ct. 354, 76 L. Ed. 685; Schwartz v. Weingart, 76 F.(2d) 863 (C. C. A. 2). It appears from a stipulation filed in this court that in each of the cases the petition and order allowing the appeal, the assignment of errors, and the citation were duly served upon the defendant King & Howe, Inc., and its attorneys. Within the principles discussed in Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953, we think this was sufficient to enable the surety to prosecute its appeal alone. Mr. Justice Miller there stated that the Supreme Court did not attach importance to the technical mode of proceeding called summons and severance but would have sustained the appeal had it appeared in any way by the record that the nonjoining defendant had been notified in writing to appear and had failed to do so. He intimated that a failure to appear after notice would estop the nonjoining party from bringing another appeal for the same matter, and would permit the court to execute the judgment against him. In the Bunn Case, already cited, Mr. Justice McReynolds noted in 285 U. S. 169, at page 177, 52 S. Ct. 354, 356, 76 L. Ed. 685, that there was no summons and severance, "nor any notice equivalent thereto." See, also, Farmers' Loan & Trust Co. v. McClure, 78 F. 211, 213 (C. C. A. 8); American Baptist Home Mission Society v. Barnett, 26 F.(2d) 350, 352 (C. C. A. 2).

The present record contains no bill of exceptions signed or allowed by / the district judge. The appellee contends that we are therefore confined to a review of the judgment roll and can consider only whether the pleadings are sufficient to support the judgment. Such is the general rule. United States v. Hill, 34 F.(2d) 133, 135 (C. C. A. 2). The appellant, however, urges that the stipulated facts may be considered although not incorporated in a bill of exceptions. See Mound Coal Co. v. Jeffrey Mfg. Co., 240 F. 129, 130 (C. C. A. 4). But it is unnecessary to decide whether the stipulated facts are before us. If the complaint is defective, the stipulated facts, if considered, contain nothing which could cure such defect, and, if it is sufficient, there is nothing in the evidence that would aid the appellant.

The appellant contends that the complaint is fatally defective in that it fails to allege noncompliance with the Food and Drugs Act. The allegation in question states that from an examination of samples the "importation was found not to comply with the provisions of the Food and Drugs Act of June 30, 1906, and amendments (21 USCA § 1 et seq.), in that it was found to be adulterated, since it is a drug under a name recognized in the United States Pharmacopoeia, and differed from the standard of strength, quality and purity given therein." The appellant argues that within the definition of "adulteration in drugs," as stated in section 7 of the act (21 USCA § 8) and the regulations adopted pursuant to section 3 thereof (21 USCA § 3), a drug is not adulterated, even though it deviates from the standard set out in the official Pharmacopoeia, if it is properly labeled, and, therefore, the complaint must also charge that it was not properly labeled. Section 7 reads as follows (34 Stat. 769 (21 USCA § 8):

" * * * for the purposes of this Act [sections 1 to 15, inclusive, of this title], an article shall be deemed to be adulterated:

"In case of drugs:

"First. If, when a drug is sold under or by a name recognized in the United States Pharmacopoeia or National Formulary, it differs from the standard of strength, quality, or purity, as determined by the test laid down in the United States Pharmacopoeia or National Formulary official at the time of investigation: [Provided, That] no drug defined in the United States Pharmacopoeia or National Formulary shall be deemed to be adulterated under this provision if the standard of strength, quality, or purity be plainly stated upon the bottle, box, or other container thereof although the standard may differ from that determined by the test laid down

in the United States Pharmacopœia or National Formulary."

The regulations appear in Circular 21, 8th Revision, issued by the United States Department of Agriculture, August 7, 1922, and Regulation 8, section 7, reads as follows:

"(a) A drug sold under or by a name, or a synonym, recognized in the United States Pharmacopoeia or National Formulary, unless labeled as prescribed by paragraph (b) of this regulation, shall conform to the standard of strength, quality or purity for the article as determined by the test laid down in the United States Pharmacopoeia or National Formulary official at the time of investigation. * * *

"(b) A drug sold under or by a name, or a synonym, recognized in the United States Pharmacopoeia or National Formulary which does not conform to the standard of strength, quality, or purity for the article as determined by the test laid down therein shall be labeled with a statement to the effect that the drug is not a United States Pharmacopoeia or National Formulary article; in addition it shall be labeled with a statement showing its own actual strength, quality, or purity, or else with a clear and exact statement of the nature and extent of the deviation from the standard of strength, quality, or purity set out for such article in the United States Pharmacopoeia or National Formulary."

■ It is a recognized rule of pleading that where a party relies upon a statute containing a general clause followed by an exception or proviso in a subsequent substantive clause, such exception is a matter of defense and need not be negatived. United States v. Cook, 17 Wall. 168, 176, 21 L. Ed. 538; Schlemmer v. Buffalo, Rochester, etc., Ry., 205 U. S. 1, 10, 27 S. Ct. 407, 51 L. Ed. 681; Manhattan Oil Co. v. Mosby, 72 F.(2d) 840, 843 (C. C. A. 8); United States v. Murphy & Co., 7 Cust. App. 35, 37; Steel v. Smith, 1 B. & Ald. 95, 99. Within this rule we think the complaint sufficiently charged a violation of the statute by alleging the importation of a drug differing from the standard required by the Pharmacopoeia, and that it was for the defendants to allege and prove the defense of proper labelling, if it was so labeled as to come within the proviso. Although in the regulations the exception is incorporated in the body of the general clause, this difference in form cannot affect the nature of the proviso as contained in the statute, and does not, in our opinion, change the rule of pleading.

■ The appellant's second contention is that the complaint is insufficient, in that it does not allege that the Secretary of Agriculture certified to the United States district attorney the facts showing violation of the law, with a copy of the results of the chemical analysis authenticated by the oath of the analyst, as provided in section 4 (21 USCA § 11). In United States v. Morgan, 222 U. S. 274, 32 S. Ct. 81, 56 L. Ed. 198, it was held that compliance with the provisions of section 4 was not a condition precedent to a criminal prosecution. A similar ruling has been made in libels for forfeiture of adulterated or misbranded articles. United States v. W. T. Rawleigh Co. (C. C. A.) 57 F.(2d) 505; United States v. Sixty-Five Casks Liquid Extracts, 170 F. 449 (D. C. W. Va.), affirmed 175 F. 1022 (C. C. A. 4); United States v. Seventy-Five Barrels of Vinegar, 192 F. 350 (D. C. Iowa); United States v. Fifty Barrels of Whiskey, 165 F. 966 (D. C. Md.). The reasoning of these cases is equally applicable to the present suit.

■ Finally, the appellant argues that the complaint charges no breach of the bond because there is no allegation of a failure to comply with any of its conditions.* The contention is that where merchandise has been delivered by the collector, neither destruction, exportation, nor redelivery can be

---

* After reciting that the principal expects to enter imported articles within a period of one year after July 27, 1929, and desires delivery prior to the ascertainment, among other things, as to the right of said articles to admission into the United States, the condition of the bond is stated as follows: "If the said obligors shall produce to the Collector of Customs all the documents, and shall perform all acts, and comply with all the conditions required by Part 3 of Title IV of the Tariff Act of 1922, and shall comply with the requirements of all other laws and regulations made in pursuance thereof relating to the importation and admission of said articles into the commerce of the United States, then this obligation shall be void; otherwise it shall remain in full force and effect to the extent and in such amounts as liquidated damages as may be demanded by the Collector in accordance with law and regulations not exceeding the penal sum of this obligation, for any breach or breaches thereof."

enforced unless a bond has been given so requiring, and that the bond at bar has no such provision. The bond in suit binds the obligors to "comply with all the conditions required by part 3 of title 4 of the Tariff Act of 1922." Part 3 of title 4 includes section 486 of the Tariff Act (19 USCA § 358), which requires the giving of a bond having certain conditions, one of which is to return to the collector, on demand by him, any merchandise found not to comply with the law and regulations governing its admission into the commerce of the United States. The bond in suit does not expressly state this condition, but we think the bond must be read as incorporating it by reference in the clause "comply with all the conditions required by part 3 of title 4 of the Tariff Act of 1922," which embraces section 486. If this clause merely bound the obligors to give a bond having the conditions specified in that section, the bond in suit was a bond to give a bond. That was certainly not the intention of the parties. This was the only bond contemplated, and when it refers to the conditions required by part 3 of title 4 of the Tariff Act it was intended to bind the obligors to do the things required as conditions by a bond such as that section describes. That such was the intention finds corroboration, if any is needed, in the fact that the bond is on a form bearing the caption "Term Entry Bond (To redeliver merchandise, to produce documents, to pay duties and charges due on final liquidation etc., and to perform all conditions required by Part 3 of Title IV of the Tariff Act of 1922, and all other laws and regulations made in pursuance thereof.)" Of the actual intention of the parties there can be no doubt. We think the bond, though inartistically drawn, is adequate to express that intention.

Appellant relies upon several cases which it urges compel the conclusion that a bond omitting specific provisions required by statute will not be construed to contain them. United States, to Use of Stallings v. Starr, 20 F.(2d) 803 (C. C. A. 4); United States to Use of Zambetti v. American Fence Construction Co., 15 F.(2d) 450 (C. C. A. 2); United States v. Stewart, 288 F. 187 (C. C. A. 8); United States v. Montgomery Heating & Ventilating Co.,

255 F. 683 (C. C. A. 5); Babcock & Wilcox v. American Surety Co., 236 F. 340 (C. C. A. 8). United States v. Starr, supra, which may be taken as typical, was an action by materialmen to recover on a bond given by a contractor for the faithful performance of a contract with the United States. Neither the bond nor the contract, which the bond incorporated by reference, contained any obligation for the payment of laborers and materialmen. The contract did, however, require the contractor to furnish a bond for the protection of "laborers and/or materialmen, as may be required by the laws of the United States." The court denied recovery, refusing to construe the bond as incorporating the condition of a bond such as the statute specified. We think these cases do not control the construction of the bond now in suit. The bonds there involved made no reference to the statute and were conditioned only on performance of the contracts, which, as already stated, contained no obligation for the payment of materialmen. Although the contract bound the contractor to furnish a bond in the statutory form, there was nothing in the bond actually furnished to indicate that it was intended to be so conditioned. In the present case, however, the bond furnished expressly refers to the statute (section 486 [19 USCA § 358]), and this reference would be meaningless unless construed as we have indicated.

The appellant requests us to take judicial notice that the form of the bond in suit (Customs Form 7553) was subsequently revised so as to provide expressly for redelivery of the merchandise when demanded by the collector (T. D. 45474, Treasury Decisions, vol. 61, p. 369). Assuming that such judicial notice is permissible, we cannot accept the argument based upon it. The Treasury Department's revision of Customs Form 7553 may well have been out of abundant caution, or for some other reason, and is by no means an administrative interpretation or admission that the original form did not bind the obligors to redeliver the merchandise to the collector.

In our opinion the District Court correctly construed the bond, and the judgments are affirmed.