## NORFOLK & SUBURBAN TURNPIKE COMPANY v. COMMONWEALTH OF VIRGINIA.

### ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 962. Submitted April 8, 1912.—Decided June 10, 1912.

Although a State may not be named as a party in the original proceeding, if it was really begun and prosecuted on its behalf and the State is named in all the papers on appeal and the State's attorney appears in this court generally, even if inadvertently, a motion to dismiss on the ground that the State is not a party will not prevail.

Where the highest court of the State refuses a writ of error because, in its opinion, the judgment below is plainly right, doubt exists as to whether it is a refusal to take jurisdiction or an exercise of jurisdiction and affirmance; under the circumstances of this case, however, the Chief Justice of the state court having allowed the writ of error for review by this court, *held* that the judgment was on the merits and the writ of error runs to the highest court. *Western Union Telegraph Co.* v. *Crovo*, 220 U. S. 364, distinguished.

Where the refusal of the highest court of the State to allow a writ of error is also a refusal to take jurisdiction the writ of error from this court runs to the lower court.

Hereafter this court will regard the refusal of the highest court of the State to allow a writ of error to review the judgment of a lower court as a refusal to take jurisdiction and not as an affirmance unless the contrary plainly appears on the face of the record.

A State does not take property of a turnpike company by opening the gates when its road is out of repair; nor is the enforcement of a statute which makes the keeping of a toll road in repair a condition precedent to the right to collect tolls an unconstitutional taking of property without due process of law; and in this case so *held* as to the enforcement of such a statute which has been in force in the State of Virginia since 1817.

THE facts, which involve the jurisdiction of this court under § 709, Rev. Stat., and the power of a State under the Fourteenth Amendment to suspend tolls on a turnpike pending the making of repairs properly ordered by state authority, are stated in the opinion.

*Mr. Samuel W. Williams*, Attorney General of the Commonwealth of Virginia, with whom *Mr. J. D. Hank* was on the brief, for defendant in error, in support of the motion.

*Mr. Nathaniel T. Green*, for plaintiff in error, in opposition thereto.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

On April 24, 1911, as authorized by the laws of Virginia, the judge of the Circuit Court of Princess Anne County, Virginia, of his own motion, appointed three persons, styled viewers, to examine and report upon the condition of three turnpikes, situated in the county and owned by the plaintiff in error. The viewers reported the turnpikes to be in bad condition and made recommendations as to the work necessary to be done to put them in good order. The Turnpike Company appealed from the report of the viewers to the Circuit Court. On the hearing of the appeal various motions were made on behalf of the Turnpike Company, to the overruling of which exception was taken, and which will be hereafter referred to, and an order was

entered as authorized by a statute suspending the taking
of tolls on the turnpike until they were put in proper repair.
The effect of the order, however, was suspended by the
making of an application to the Supreme Court of Appeals
of Virginia for the allowance of an appeal and a writ of
error to the order of the Circuit Court. The application
however was rejected by an order reading as follows:

"In the Supreme Court of Appeals, Held at the Library
Building in the City of Richmond on Thursday, the 11th
Day of January, 1912.

"The petition of the Norfolk & Suburban Turnpike
Company, a corporation, for a writ of error and super-
sedeas to a judgment or order entered by the Circuit Court
of Princess Anne County, on the 12th day of December,
1911, in certain proceedings, pending in said court, whereby
the collection of tolls by the said petitioner on certain
sections of a turnpike located in said county was sus-
pended, having been maturely considered and the tran-
script of the record of the judgment or order aforesaid
seen and inspected, the court being of opinion that the
said judgment or order is plainly right, doth reject said
petition."

A writ of error addressed to the Supreme Court of Ap-
peals of Virginia was then allowed by the President of that
court. It was therein recited that the Supreme Court of
Appeals of Virginia had "refused a writ of error, thereby
affirming said judgment of said Circuit Court of Princess
Anne County, Virginia." The same judicial officer also
approved the bond and signed the citation. The Common-
wealth of Virginia, however, was named as the obligee in
the bond, and the citation was directed to that State as
the "defendant in error." The Attorney General of the
State, who states in his brief that he inadvertently signed
as "Commonwealth's attorney of Princess Anne County,"
acknowledged service of the citation and entered the ap-
pearance of the Commonwealth in this court "without ad-

mitting that the Commonwealth of Virginia is a proper party and reserving all rights."

Appearing for the defendant in error, the Attorney General of Virginia moves to dismiss the writ of error, "because this court has no jurisdiction," or to affirm the order and judgment below "because the questions on which jurisdiction depend are so frivolous as not to need further argument."

The motion to dismiss is based upon the contention that the appearance in this court is a qualified one and "that the appeal was improvidently awarded in this case, that the Commonwealth of Virginia has nowhere in the proceedings been made a party, and is not now a proper party in this case." But although the Commonwealth of Virginia was not named as a party to the proceedings initiated by the judge of the Circuit Court, it is not claimed that those proceedings were not in reality begun and prosecuted on behalf of the Commonwealth, which in effect must have been the conclusion of the President of the Supreme Court of Appeals of Virginia when he approved the bond and allowed the citation, as shown by the recitals in those papers to which we have heretofore referred. The grounds of the motion are therefore without merit. *Pearson* v. *Yewdall*, 95 U. S. 294.

But aside from the propositions on which the motion to dismiss rests and which we have disposed of, there is an additional ground to which on our own motion we deem it necessary to refer, that is, the existence of a possible doubt as to our jurisdiction begotten by the form in which the court expressed the action taken by it concerning the proceedings to review the order or judgment of the trial court. Thus although the Supreme Court of Appeals of Virginia denied a writ of error to the Circuit Court because it was of opinion that the order of the lower court was "plainly right," it does not affirmatively appear whether, by this action, the court was merely declining

to take jurisdiction of the case or in effect was asserting jurisdiction and disposing of the case upon the merits by giving the sanction of an affirmance of the judgment of the trial court. This writ of error runs to the Supreme Court of Appeals and not to the trial court. In view of the ambiguity it is unquestioned that the writ of error would have to be dismissed if we applied the ruling in the *Western Union Telegraph Company* v. *Crovo*, 220 U. S. 364, 366. It will be seen, however, that the court below in acting upon the application presented to it to review the judgment of the trial court conformed to what was held to be an exercise of jurisdiction by affirmance in *Gregory* v. *Mc-Veigh*, 23 Wall. 294. It is clear, therefore, that we cannot apply the rule announced in the *Crovo Case* and the one previously declared in the *Gregory Case*, because the two could not be consistently made here applicable. The difference between the cases, however, is not one of principle, but solely depends upon the significance to be attributed to the particular form in which the action of the court below is manifested. In other words, the apparent want of harmony between the rulings of this court has undoubtedly arisen from the varying forms in which state courts have expressed their action in refusing to entertain an appeal from or to allow a writ of error to a lower court and the ever-present desire of this court to so shape its action as to give effect to the decisions of the courts of last resort of the several States on a subject peculiarly within their final cognizance. A like want of harmony resulted from similar conditions involved in determining what was a final judgment of a state court susceptible of being reviewed here, and the confusion which arose ultimately led to the ruling that the face of the judgment would be the criterion resorted to as the only available means of obviating the great risk of confusion which would inevitably arise from departing from the face of the record and deducing the principle of finality

by a consideration of questions beyond the face of the alleged judgment or decree which was sought to be reviewed. The wisdom of that rule as applied to a question like the one before us is, we think, apparent by the statement which we have made concerning the rule in the *Crovo Case* and the previous decisions. Despite the ambiguity involved in the form in which the court below expressed its action, we do not think that ambiguity should be solved against the existence of jurisdiction, because, in our opinion, there is little or no room for doubt that when the form of expression used by the court below is read in the light of the previous rulings it becomes quite clear that the court deemed that it was exercising jurisdiction over the cause and virtually affirming the judgment and was expressing its action in such a way as to clearly indicate that such was its intention. This is fortified by the fact that the writ of error was allowed by the presiding judge of the court. While, therefore, in this case, for the reasons stated, we entertain jurisdiction and do not of our own motion dismiss the writ, for the purpose of avoiding the complexity and doubt which must continue to recur and for the guidance of suitors in the future we now state that, from and after the opening of the next term of this court, where a writ of error is prosecuted to an alleged judgment or a decree of a court of last resort of a State declining to allow a writ of error to or an appeal from a lower state court, unless it plainly appears, on the face of the record, by an affirmance in express terms of the judgment or decree sought to be reviewed, that the refusal of the court to allow an appeal or writ of error was the exercise by it of jurisdiction to review the case upon the merits, we shall consider ourselves constrained to apply the rule announced in the *Crovo Case*, and shall therefore, by not departing from the face of the record, solve against jurisdiction the ambiguity created by the form in which the state court has expressed its action.

Upon the merits, we are of opinion that the alleged Federal questions are so plainly wanting in merit as not to justify the retention of the cause for oral argument. The supposed Federal questions are embodied in three motions made in the Circuit Court. By motion No. 1 the Circuit Court was asked to dismiss the proceedings because, as the statute, in the event the report of the viewers was confirmed, authorized the public until the turnpikes were put in repair to use the same for the purpose of travel and passage without payment of toll or other compensation, a taking of the property of the plaintiff in error for public use without just compensation was authorized, in violation of the due process clause of the Fourteenth Amendment. Motion No. 2 embodied a request that the court should not enter judgment affirming the report of the viewers because, for the same reasons specified in the first motion, the judgment would operate to deprive the plaintiff in error of its property without due process of law, in violation of the Fourteenth Amendment. By motion No. 3 it was in effect claimed that the turnpikes in question were not profitable, that plaintiff went into possession of the roads in July, 1908, and had operated the same continuously; that no complaint had theretofore been made as to the condition of the roads; that the statute under which the proceeding was prosecuted fixed the tolls to be charged, and that substantially all the revenue derived from the tolls had been judiciously employed in keeping the roads in repair, and that they had been kept "in as good repair as possible with the revenue received therefrom." It was alleged that to enter a judgment suspending the collection of tolls under such circumstances would violate the due process clause of the Fourteenth Amendment. The refusal of the court to hear evidence to substantiate the claim made in this motion and the overruling of the motion were duly excepted to. It nowhere appears in the record that there was even a suggestion that the

statute in question invaded contract rights as to the tolls to be charged, nor was it claimed that since the acquisition by plaintiff in error of his rights therein the legislature of Virginia in regulating the turnpikes had altered the tolls. On the contrary in the brief of counsel for the Commonwealth the statement is made that "this statute has been a law of Virginia, with little change, since February 7, 1817," and there has been no denial of this statement. The motions below did not, therefore, amount to a claim against the rates *per se*, but simply asserted that as the travel on the turnpikes was not sufficient to cause their operation to be profitable, that is to say, to produce a sufficient revenue to enable the roads to be kept in good order, therefore the obligation imposed by the statute and voluntarily assumed ought not to be enforced. The mere statement of this proposition is sufficient to establish its entire want of merit. To suspend the taking of tolls while the roads were out of repair manifestly was not a taking of property, but was simply a method provided by statute to enforce the discharge of the public duty respecting the safe and convenient maintenance of a public highway. In other words, as observed by the Attorney General for the Commonwealth, the burden of keeping the turnpikes in repair was made a condition precedent to the right to collect tolls.

*Affirmed.*