HARTFORD ACCIDENT & INDEMNITY CO. *v.* BUNN ET AL.

No. 333. Argued January 14, 1932.—Decided March 14, 1932.

170

*Messrs. Marion Smith* and *L. Barrett Jones,* with whom *Messrs. W. Calvin Wells, Max F. Goldstein,* and *Arthur G. Powell* were on the brief, for appellant.

172

*Messrs. Gerard Brandon, S. B. Laub,* and *Garner W. Green,* with whom *Messrs. L. T. Kennedy, E. H. Ratcliff, Joseph E. Brown,* and *Marcellus Green* were on the brief, for appellees.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

October 18, 1926, J. V. & R. T. Burkes agreed with the Investment Company, owner of certain land in Natchez, Mississippi, to construct a hotel thereon. The contract contains the following clauses—

"Article 30. Guaranty Bond.—The Owner shall have the right, prior to the signing of the contract, to require the Contractor to furnish bond covering the faithful performance of the Contract and the payment of all obligations arising thereunder, in such form as the Owner may prescribe with such sureties as he may approve. If such bond is required by instructions given previous to the submission of bids, the premium shall be paid by the Contractor; if subsequent thereto it shall be paid by the Owner

"Obligations of Bondsmen.—The Contractor's bondsmen shall obligate themselves to all the terms and covenants of these specifications, and of the contracts covering the work executed hereunder, and the Owner and the Architect reserve the right to make all desired changes, alterations, and additions, under the conditions and in the manner hereinbefore described, without in any measure affecting the liability of the bondsmen or releasing them from any of their obligations hereunder."

October 20, 1926, the Burkes gave a bond for $316,-822.00, payable to the Investment Company, with appellant as surety. Among other things this provides—

"Whereas, the Principal and the Obligee have entered into a certain written contract (hereinafter called the contract) dated October 18th, 1926, To construct 'Eola Hotel' building as per plans and specifications #640 as prepared by Weiss & Dreyfus, Architects, New Orleans, La., a copy of which is or may be attached hereto, and is hereby referred to and made a part hereof. Now, therefore, the condition of this obligation is such that if the principal shall indemnify the obligee against loss or damage directly caused by the failure of the principal faithfully to perform the contract, then this obligation shall be null and void; otherwise it shall remain in force; provided, however, this bond is executed by the surety, upon the following express conditions, which shall be precedent to the right of recovery hereunder. . . .

"11. No right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee named herein; and the obligation of the surety is and shall be construed strictly as one of suretyship only."

Payments to the contractors were made as required by the building contract but they failed to satisfy claims for material furnished by Bunn Electric Company and others. The latter notified the Investment Company. There-

upon, it instituted a proceeding in the Chancery Court, Adams County, Mississippi, against the contractors, the appellant Hartford Accident & Indemnity Company, and many unpaid materialmen. The bill prayed for a decree declaring the indemnity bond to be one for faithful performance of the building contract and subject to the rights and liabilities provided by § 3,* c. 128, Mississippi Laws of 1918 (§ 2598, Hemingway's Miss. Code 1927); also for judgments in favor of those who had furnished materials, etc.

The materialmen answered. Also by cross bill and interventions they set up their claims and asked for judgments against the contractors and appellant here, surety upon the bond. The Chancellor gave judgments in favor of the cross-complainants as prayed. The Indemnity Company appealed. The Supreme Court approved, upon the view that § 3, c. 128, Mississippi Laws 1918, applied and controlled the obligation of the bond. [132 So. 535.] It ordered that the materialmen severally " do have and recover of and from the appellant Hartford Accident & Indemnity Company, and of Aetna Casualty & Surety

---

* Chapter 128, Mississippi Laws of 1918. " Sec. 3. That when any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, shall enter into a bond with such person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may insert therein, such bond shall also be subject to the additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract; and in the event such bond does not contain any such provisions for the payment of the claims of persons furnishing labor or material under said contract, such bond shall nevertheless inure to the benefit of such person furnishing labor or material under said contract, the same as if such stipulation had been incorporated in said bond; . . ."

Company, surety in the appeal bond," the sums found to be due them.

Upon petition of the Hartford Accident & Indemnity Company alone, the Chief Justice of Mississippi allowed an appeal to this Court, July 25, 1931. The Aetna Casualty & Surety Company did not join in the appeal; there was no summons and severance nor any notice equivalent thereto.

The assignment of errors challenges the validity, under the Federal Constitution, of § 3, c. 128, Mississippi Laws, above cited, as construed and applied.

December 4, 1931, the appellees entered a motion here to dismiss the appeal. They maintain that the judgments in the Mississippi Supreme Court against appellant and Aetna Casualty & Surety Company were joint; the latter company did not join in the appeal; there was no summons and severance; consequently this Court is without jurisdiction.

December 23, 1931, appellant and the Aetna Company asked that the latter be made party to the appeal and for proper amendments to that end.

The motion to amend must be overruled. The motion to dismiss is sustained.

The challenged judgment became final June 15, 1931, more than six months before the Aetna Company applied here for permission to become a party to the pending appeal. If this application and the accompanying motion to amend were granted, the practical effect would be to permit an appeal by a party to a judgment after the prescribed time had expired.

The statute (Act of Feb. 13, 1925, c. 229, § 8, 43 Stat. 940; U. S. C. A. Title 28, § 350) provides—" No writ of error, appeal, or writ of certiorari, intended to bring any judgment or decree before the Supreme Court for re-

view shall be allowed or entertained unless application therefor be duly made within three months after the entry of such judgment or decree, . . ." Passage of the three months' period extinguished the right to grant an appeal. *Rust Land Co.* v. *Jackson,* 250 U. S. 71, 76; *Toledo Scale Co.* v. *Computing Scale Co.,* 261 U. S. 399, 418.

The judgment is joint in form and no reason appears why either or both of the parties defendant therein might not have appealed to this Court and submitted claims of error for our determination. In matters of this kind we may not disregard the face of the record and treat the judgment as something other than it appears to be. So to do probably would lead to much confusion and uncertainty.

*Haseltine* v. *Central Bank,* 183 U. S. 130, 131—" We have frequently held that a judgment reversing that of the court below, and remanding the case for further proceedings, is not one to which a writ of error will lie. . . . While the judgment may dispose of the case as presented, it is impossible to anticipate its ultimate disposition. It may be voluntarily discontinued, or it may happen that the defeated party may amend his pleading by supplying some discovered defect, and go to trial upon new evidence. To determine whether, in a particular case, this may or may not be done, might involve an examination, not only of the record, but even of the evidence in the court of original jurisdiction, and lead to inquiries with regard to the actual final disposition of the case by the Supreme Court, which it might be difficult to answer. We have, therefore, always made the face of the judgment the test of its finality, and refused to inquire whether, in case of a new trial, the defeated party would stand in a position to make a better case. The plaintiffs in the case under consideration could have secured an immediate review by this court, if the

court as a part of its judgment of reversal had ordered the Circuit Court to dismiss their petition, when, under *Mower* v. *Fletcher* [114 U. S. 127], they might have sued out a writ of error at once.".

*Norfolk Turnpike Co.* v. *Virginia*, 225 U. S. 264, 268, 269. The question was: To which state court should the writ of error run? This Court said—" The difference between the cases, however, is not one of principle; but solely depends upon the significance to be attributed to the particular form in which the action of the court below is manifested. In other words, the apparent want of harmony between the rulings of this court has undoubtedly arisen from the varying forms in which state courts have expressed their action in refusing to entertain an. appeal from or to allow a writ of error to a lower court and the ever-present desire of this court to so shape its action as to give effect to the decisions of the courts of last resort of the several States on a subject peculiarly within their final cognizance. A like want of harmony resulted from similar conditions involved in determining what was a final judgment of a state court susceptible of being reviewed here, and the confusion which arose ultimately led to the ruling that the face of the judgment would be the criterion resorted to as the only available means of obviating the great risk of confusion which would inevitably arise from departing from the face of the record and deducing the principle of finality by a consideration of questions beyond the face of the alleged judgment or decree which was sought to be reviewed. The wisdom of that rule as applied to a question like the one before us is, we think, apparent by the statement which we have made concerning the rule in the *Crovo Case* [220 U. S. 364, 366] and the previous decisions."

See *Estis* v. *Trabue*, 128 U. S. 225, 229; *Schlosser* v. *Hemphill*, 198 U. S. 173, 175; *Louisiana Navigation Co.* v. *Oyster Commission*, 226 U. S. 99, 101; *Second Nat. Bank*

v. *First Nat. Bank,* 242 U. S. 600, 602; *Bruce* v. *Tobin,* 245 U. S. 18, 19; *Matthews* v. *Huwe,* 269 U. S. 262, 264.

*Masterson* v. *Herndon,* 10 Wall, 416, 417, held—"It is the established doctrine of this court that in cases at law, where the judgment is joint, all the parties against whom it is rendered must join in the writ of error; and in chancery cases, all the parties against whom a joint decree is rendered must join in the appeal, or they will be dismissed. There are two reasons for this: 1. That the successful party may be at liberty to proceed in the enforcement of his judgment or decree against the parties who do not desire to have it reviewed. 2. That the appellate tribunal shall not be required to decide a second r third time the same question on the same record. . . . One of the effects of this judgment of severance was to bar the party who refused to proceed, from prosecuting the same right in another action, as the defendant could not be harassed by two separate actions on a joint obligation, or on account of the same cause of action, it being joint in its nature."

In *Estis* v. *Trabue,* 128 U. S. 225, an attachment was levied upon certain personalty. After the return, Estis, Doan & Co. claimed the property, and they gave a forthcoming bond with two sureties. The challenged judgment ruled " that the plaintiffs recover of the claimants and C. F. Robinson and John W. Dillard, their sureties in their forthcoming bond, the sum of six thousand and three hundred dollars, together with the costs, etc." This Court held [p. 229]—" The judgment is distinctly one against ' the claimants, and C. F. Robinson and John W. Dillard, their sureties in their forthcoming bond,' jointly, for a definite sum of money. There is nothing distributive in the judgment, so that it can be regarded as containing a separate judgment against the claimants and another separate judgment against the sureties, or as containing a judgment against the sureties payable and en-

forceable only on a failure to recover the amount from the claimants; and execution is awarded against all of the parties jointly. In such a case the sureties have the right to a writ of error. *Ex parte Sawyer*, 21 Wall. 235, 240. It is well settled that all the parties against whom a judgment of this kind is entered must join in a writ of error, if any one of them takes out such writ; or else there must be a proper summons and severance, in order to allow of the prosecution of the writ by any less than the whole number of the defendants against whom the judgment is entered."

*Mason* v. *United States*, 136 U. S. 581. A postmaster and the sureties on his official bond were sued jointly. He and some of the sureties appeared and defended. The suit was abated as to two of the sureties, who had died. The others defaulted, and judgment of default went against them. On the trial there was a verdict for the plaintiff, whereupon, July 14, 1886, judgment was entered against the principal and all the sureties. The sureties who had appeared sued out a writ of error to this judgment, without joining the principal or the sureties who had made default, and the record came here. May 5, 1890, and after expiration of the two years within which the statute then permitted the suing out of such writs, the plaintiff in error moved to amend the writ by adding the omitted parties as complainants, or for a severance of the parties, and it was held that the motion must be denied and the writ of error be dismissed.

*Hardee* v. *Wilson*, 146 U. S. 179, 180, cited earlier cases and declared—" Undoubtedly the general rule is that all the parties defendant, where the decree is a joint one, must join in the appeal." See also *Davis* v. *Mercantile Trust Co.*, 152 U. S. 590; *Garcia* v. *Vela*, 216 U. S. 598, 601; Hughes' Federal Practice, § 6153.

*The New York*, 104 Fed. 561, (Court of Appeals, Sixth Circuit, October 13, 1900) is said to support the view that in the circumstances here presented summons and sever-

ance was unnecessary. The proceeding was a cause in admiralty. The surety upon a stipulation for release of the vessel did not join in the appeal. Upon motion to dismiss, the court said—" It is well settled that all parties against whom a joint judgment or decree is rendered must join in proceedings for review· in an appellate court, or that it must appear that those who have not joined had notice of the application for the appeal or writ of error, and refused or neglected to join therein." But, it ruled that, though joint in form, the decree was separable in law and fact and, therefore, the surety was not a necessary party to the appeal.

Considering former opinions of this Court and the long established practice, we cannot accept as applicable to appeals here the doctrine approved in *The New York.* It is out of harmony with *Estis* v. *Trabue, supra,* and other cases cited above. We cannot undertake to explore the record to ascertain what issues were relied upon in courts below. So to do would lead to uncertainty and unfortunate confusion. We must accept the teams of the judgment as entered. As pointed out above, this is the approved practice when it becomes necessary to determine whether a judgment is final or to what court a writ of error should run. Like reasons apply and control here.

The appeal must be dismissed.

*Dismissed.*