### THE CARSO.

### MONAHOS et al. v. NAVIGAZIONE LIBERA TRIESTINA SOCIETA ANONYME.

### F. ROMEO & CO., Inc., v. NAVIGAZIONE LIBERA TRIESTINA, S. A.
### Nos. 241, 242.

Circuit Court of Appeals, Second Circuit.
March 12, 1934.

Loomis & Ruebush, of New York City (Homer L. Loomis and Thomas F. Peterson, Jr., both of New York City, of counsel), for appellant.

Harry D. Thirkield, of New York City (Gregory S. Rivkins, of New York City, of counsel), for appellees N. S. Monahos & Co.

Bigham, Englar, Jones & Houston, of New York City (Oscar R. Houston and F. Herbert Prem, both of New York City, of counsel), for appellee F. Romeo & Co., Inc.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

These libels were brought for the recovery of damages to certain shipments of cheese carried on the appellant's steamship Carso on a voyage from Naples, Italy, to New York in 1926. The Monahos libel was in rem against the vessel and in personam against the carrier, an Italian corporation; the Romeo libel was a suit in personam only. In each suit a final decree has been entered from which the respondent appeals.

Before considering the merits, we must dispose of a motion to dismiss presented by the appellees in the Monahos appeal. The contention is that the decree appealed from is a joint decree against the appellant and its stipulator, National Surety Company, that the latter was a necessary party to the appeal, and, since there was neither joinder nor summons and severance, that the appeal must be dismissed. Hartford Accident & Ind. Co. v. Bunn, 285 U. S. 169, 52 S. Ct. 354, 76 L. Ed. 685, and Elliot v. Lombard, 66 F. (2d) 662 (C. C. A. 5), are relied upon. These cases are inapplicable. In each a judgment was entered from which it was assumed that the surety might have appealed. That is not true in the case at bar. Although it was adjudged that the libelants recover from the claimant and its stipulators, and from the respondent, a stated sum and that the libelants "have judgment and execution therefor against Navigazione Libera Triestina Societa Anonyme and National Surety Company," the succeeding paragraph ordered that, unless the decree be satisfied or an appeal be taken "the stipulators for costs and value * * * cause the engagements of their respective stipulations to be performed, or show cause * * * why execution should not issue against them * * * to enforce satisfaction of this decree." Thus it is apparent that before any execution was to issue against the stipulators they were to have an opportunity to show cause and present objections, if any they had. From such a decree the stipulators could not appeal because it was not final as to them. The Lydia, 1 F. (2d) 18 (C. C. A. 2); Ex parte Sawyer, 21 Wall. 235, 239, 22 L. Ed. 617. Judge Hough discussed the matter with his usual lucidity in The Lydia, supra, which involved a decree identical in form with that now before us. At page 21 of 1 F. (2d), his opinion reads:

"The decrees at bar were entered in the form common, if not universal, in this circuit, and the practice as it has been followed for generations is laid down in Benedict's Admiralty (4th Ed.) § 498. This form is even less stringent, so far as sureties are concerned, than that considered by the Supreme Court in the Sawyer Case, supra. That decree provided that, unless an appeal be taken, 'a summary judgment' be entered in favor of the libelants against the sureties, naming them; whereas, under the practice followed here, it is necessary to issue an order to show cause against the sureties, and no execution can issue against them until after they have been heard and such objections as they may make have been overruled. Yet in the Sawyer Case it was held that the decree was not final and did not authorize an appeal. As we have power to consider only appeals from final decrees in admiralty, it is clear that the surety company has no technical standing in this court."

Judge Hough then pointed out that the practice is not uniform in the several circuits in respect to methods of compelling stipulators to make good their stipulations. Apparently in the Fifth circuit the practice is to decree execution unconditionally. The Bylands (C. C. A.) 231 F. 101, 103; Elliot v. Lombard, 66 F. (2d) 662, 663. With these decisions we have no quarrel; the difference between those decrees and the one before us justifies a different result. Compare The Glide, 72 F. 200 (C. C. A. 4); The New York, 104 F. 561 (C. C. A. 6); Perriam v. Pacific Coast Co., 133 F. 140 (C. C. A. 9); The Cartona, 297 F. 827 (C. C. A. 2); The Buckhannon, 299 F. 519 (C. C. A. 2); The L. I. R. R. No. 18, 67 F. (2d) 290 (C. C. A. 2). The motion to dismiss the appeal in the Monahos suit is denied.

These appeals involve the construction of a stipulation which was filed in the court below. Before the suits were reached for trial, five libels for damage to other consignments of cheese carried on the same voyage had been litigated in the Southern district and were pending on appeal in this court. They were subsequently decided under the title of The Carso (C. C. A.) 53 F. (2d) 374. To avoid the necessity of litigating in the court below the same issues that would be decided in The Carso appeal, the parties stipulated that "the issues" in the present suits "shall be deemed to be controlled by the decision to be rendered" in The Carso, except "the special issues claimed to exist" and "now submitted." In the Romeo suit the special issue, which related to notice of claim, became irrelevant after The Carso decision. The special issue reserved in the Monahos suit will be mentioned hereafter. When our opinion in The Carso was handed down, it appeared that this court grouped the cases of cheese there in litigation into three categories, and held the carrier liable only in respect to cases of cheese falling within the third group, wherein clean bills of lading had been issued with knowledge that the goods were defective when shipped. Such knowledge was proven by stains upon the exterior of the cases as indicated by the mate's notation upon boat notes or receipts that the cases were "stained by contents" or "show stains originating from

the contents." On February 16, 1932, some six months after The Carso opinion was filed, the District Judge before whom the present suits were pending notified counsel that a hearing would be had on March 1st "to supplement the present record and stipulations as may be required" in order to dispose of the cases in accordance with that opinion. At such hearing the libelants, over the respondent's strenuous objections, were allowed to put in evidence their respective bills of lading and to read excerpts from The Carso record on appeal showing that the boat notes, with the mate's notations referring to stains, included the cases of cheese covered by the Romeo and Monahos bills of lading. Parenthetically it may be observed that these boat notes had been introduced in evidence in the Monahos suit at the hearing of January 16, 1931, held the day following the signing of the stipulation (folios 230, 237).

■ It is contended by the appellant that in taking any proof whatever the District Court violated the terms of the stipulation; that the court was at liberty to do nothing but dismiss or enter a decree that the libelants recover 45 per cent. of their provable damages. The contention that the libelants' recovery should be limited to a percentage of their damage is a most extraordinary claim. In The Carso appeal, 468 of the 1,050 cases of cheese involved in the litigation were found to be within the third group, as to which liability was imposed. Thus it chanced that the vessel was held liable for approximately 45 per cent. of the number of cases there in litigation. To let such chance percentage govern the decision of the cases in the Eastern district is too whimsical a result to have been within the contemplation of the parties in making their stipulation. The only reasonable construction of it is that they intended the principles decided in The Carso to control similar issues in the present cases. We think the stipulation was fairly followed by the District Court. Only by comparing the situation in the "controlled" cases with that for which the carrier was held liable in the "controlling" case could the stipulation be given any reasonable effect.

■ The appellant contends that he should have been allowed to take testimony abroad to prove that the stains referred to in the boat notes were not due to defective cheese but to olive oil foots used in packing. Since the appellee had failed to introduce such testimony in The Carso litigation, it seems probable that the stipulation should be construed to preclude such testimony here, but, were it construed otherwise, the court was well justified in denying so belated an application. More than a year had elapsed since the boat notes were introduced in the Monahos suit, and, if counsel wished to contradict the admissions they contained, he had had more than ample time to have it ready.

■ The libel in the Monahos suit had originally claimed that the damage to the libelants' cheese had occurred on shipboard subsequent and not prior to shipment, and a deposition had been taken in an attempt to prove this. The stipulation had reserved as a special issue "whether and to what extent the nature of the libelant's claim as set forth in its libel and the nature of the deposition of its surveyor, viz.: William H. Briscoe, * * * renders appropriate a decision different" from that which might be rendered in The Carso. Following the execution of the stipulation, the court granted leave to amend the libel so as to charge the giving of clean bills of lading and the out-turn of damaged goods, as in the Romeo suit and The Carso litigation. This amendment is now complained of. We think it was permissible within the stipulation, which was expressly made "without prejudice to any rights or remedies, such as the amendment of pleadings or otherwise. * * *" It is true that the amendment made irrelevant the special issue specifically reserved. From this it may be argued that it was not the type of amendment which the stipulation contemplated might be made. If so, then the respondent should have asked to be relieved from the stipulation. This was suggested by Mr. Loomis but upon Mr. Thirkield's acquiescence, Mr. Loomis did not press the suggestion (folio 216). The amendment was granted July 17, 1931, and no motion was thereafter made for relief from the stipulation. Since the special issue was made irrelevant by the amendment, we see no necessity for having taken Mr. Briscoe's testimony at the March hearing and no prejudice to the appellant in the fact that it was taken.

Decrees affirmed.