**PFLUEGER et al. v. SHERMAN et al.***

**No. 7321.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 14, 1935.

*Rehearing denied March 25, 1935.

John Francis Neylan and Bartley C. Crum, both of San Francisco, Cal., for appellants.

Alfred Sutro, W. H. Lawrence, and Eugene M. Prince, all of San Francisco, Cal., and W. L. Stanley, of Honolulu, T. H., for appellees.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Three actions were filed by stockholders of H. Hackfeld & Co., Limited, in relation to the alleged sale of that corporation's assets, to American Factors, Limited:

1. Isenberg v. Sherman, in the Superior Court of the City and County of San Francisco, Cal.; judgment against the complaining stockholders, who were also the complainants below and are the appellants herein, affirmed by the Supreme Court of California, 212 Cal. 454, 298 P. 1004; petition for rehearing denied, with opinion, 212 Cal. 507, 508, 299 P. 528; motion to recall remittitur denied, with opinion, 214 Cal. 722, 732, 7 P.(2d) 1006; certiorari denied, 286 U. S. 547, 52 S. Ct. 501, 76 L. Ed. 1283. The first opinion by the Supreme Court of California is 50 pages in length.

2. Trent Trust Company, Ltd., v. Miller, Equity No. 2575, Circuit Court of the First Judicial Circuit of Hawaii. This action was still pending at the time the record herein was prepared.

3. The action herein.

On October 17, 1924, the appellants herein instituted this suit in the Circuit Court of the First Judicial Circuit of Hawaii. The case was removed to the District Court of the United States for the territory. The bill was entitled one "for accounting, relief against fraud, for damages and incidental relief."

From the foregoing statement, it will be seen that the facts involved in the present litigation have repeatedly been considered and stated by state and federal courts. For that reason, a detailed statement of the allegations of the present bill is not necessary.

Suffice it to say, the appellants allege that the corporation has been stripped of its assets for $7,500,000, whereas the true value thereof was more than $17,500,000; and that the sale of the assets "was accomplished by the fraud and conspiracy of" the corporation's "officers and directors, and the Trent Trust Company, Ltd., the trustee in liquidation."

In this connection, it should be noted that the Trent Trust Company, Ltd., one of the respondents-appellees in the instant case, was the petitioning trustee in the case of Isenberg v. Trent Trust Company, infra, which was strongly relied upon by the present appellants in their supplemental brief before the Supreme Court of California in the present controversy. Isenberg v. Sher-

man, 212 Cal. 485, 486, 298 P. 1004, 299 P. 528, supra. Isenberg v. Trent Trust Company was twice before this court. 26 F.(2d) 609; on rehearing, 31 F.(2d) 553; certiorari denied, 279 U. S. 862, 49 S. Ct. 479, 73 L. Ed. 1001.

On October 31, 1924, the parties entered into a stipulation reciting the pendency of the California case in San Francisco, involving the same parties and subject-matter, and agreeing, in substance, that the proceedings in the instant case should be stayed until the trial of the California case, and that "any final judgment rendered in said proceeding pending in the Superior Court of the State of California * * * shall be and become the final judgment and determination of the rights of all the parties hereto in all jurisdictions."

It is claimed by the appellants that by the terms of a subsequent stipulation they were given the right to introduce further evidence in relation to all issues not determined in the judgment rendered in the California case. The appellees contend that such reservation applies only to another suit, No. 2575, supra.

On September 29, 1932, after the Supreme Court of California had rendered its final judgment, as set forth above, the appellant filed a motion in the court below in the instant case, which, as we have seen, had been stayed by stipulation of the parties, asking that the cause be set for trial on all issues "raised by the pleadings herein which were not adjudicated to final judgment" in the California case.

On October 22, 1932, the appellees moved the court below that judgment be rendered in their favor and against the appellants in accordance with the California judgment and the above-mentioned stipulation.

On January 9, 1933, the complainants-appellants J. C. Pflueger and H. H. Pflueger asked for leave to file a supplemental bill, alleging, inter alia, that 185 shares of the stock of H. Hackfeld & Co., Limited, owned by J. C. Pflueger, had not in fact been seized by the Alien Property Custodian as claimed, and that therefore the resolution of the stockholders of the company authorizing the sale to American Factors was not adopted with the consent of all the stockholders of the Hackfeld Company, and hence was absolutely void. The affidavit of Mr. Neylan in support of the motion for leave to file the supplemental pleading set forth that he had been ignorant of the material facts alleged

therein at the time the original bill of complaint had been filed, and that such facts had been concealed from him and from the complainants below until the month of July or August, 1931.

In this connection, it should be stated that the first judgment of the Supreme Court of California in the present controversy was handed down on April 30, 1931. A motion to recall the remittitur, however, was denied, with opinion, by the same tribunal on January 29, 1932. At that time, the question of these 185 shares of stock was discussed by that court, as may be gathered by the following language of the opinion:

"Appellants contend that the judgment of this court was improvidently granted by reason of a mistaken idea as to the facts of the case; that such mistaken idea was caused by certain false suggestions in the briefs of opposing counsel; that the respondents [appellees herein] had the evidence as to the true facts, but failed to produce the same. The whole controversy centers upon the question as to whether the Alien Property Custodian, acting pursuant to the provisions of the Trading with the Enemy Act [see 50 USCA Appendix § 1 et seq.], lawfully seized 185 shares of common stock in H. Hackfeld & Co., Limited, belonging to J. F. Pflueger, before July 19, 1918, the date on which such shares were voted by the custodian's representative at the stockholders' meeting, at which the assets of the Hackfeld firm were sold to American Factors, Limited. * * *

"We have discussed the *merits* of the points raised by petitioners at some length. We have not done so with the intent of deciding those points on their merits, because on this proceeding we have no power so to do. This is so because, having determined not to recall the remittitur, this court has no power now to decide any question in reference to the merits of this controversy. Since the remittitur is not to be recalled, this case must be treated as having been determined finally and no longer within the jurisdiction of this court. The only purpose of discussing the merits is to show that the alleged misstatements and alleged suppression of evidence were all directed to an immaterial matter. If the evidence that petitioners [including the appellants herein] complain was not introduced had been introduced, it could not possibly have affected the judgment of this court, under the interpretation given by it, in its main opinion, to the Trading with the Enemy Act."

214 Cal. 724, 732, 7 P.(2d) 1006, 1007, supra. (Italics ours.)

The same 185 shares were also referred to in the State Supreme Court's opinion denying a rehearing, 212 Cal. 507, 299 P. 528, on May 28, 1931.

On January 26, 1933, John Francis Neylan, one of the attorneys for the appellants, made an affidavit in the court below setting forth the receipt of telegrams from or on behalf of eleven of the seventeen original complainants, announcing that those eleven complainants named in the affidavit wished "to withdraw from main case," or "to abandon all further litigation."

In this connection, it must be observed that only three of the complainants who were original parties to the bill filed in the court below are participating in the present appeal. The absence of fourteen complainants, therefore, is to be accounted for.

On February 7, 1933, Mr. Neylan and James L. Coke, another attorney of record for the complainants below, filed in the District Court a written "withdrawal of attorneys" for thirteen of the complainants who were named in the document. Those thirteen complainants were quoted as saying that "they no longer wish to be represented in the above entitled cause."

This withdrawal of attorneys, which was based on the Neylan affidavit above referred to, was approved and allowed by the court, but no dismissal was filed as to any complainant.

The appellants concede that the "Neylan affidavit does not cover complainants J. F. Humburg, Bertram von Damm or August Humburg." An examination of the "withdrawal of attorneys" discloses that it omits the name of J. F. Hackfeld, one of the complainants whose names originally appeared on the bill. The substitutes now offered by the appellants for the lack of necessary parties on appeal will be set out in chronological order.

In one of their briefs, the appellants assert that "an inspection of the record in the trial court [of February 10, 1933] shows that one of the counsel for the appellees, Mr. Stanley, suggested the death of Mr. Hackfeld," and quote from that record to the effect that Mr. Stanley asked for the "substitution" for Mr. Hackfeld of Frank E. Thompson, the ancillary administrator, filed certain probate papers, etc.

On March 21, 1933, the court below filed its decree, in part as follows:

"The above entitled cause having come on for hearing on the 2nd day of March, 1933, upon the Motion of the respondents therein named, filed herein on the 22nd day of October, 1932, that judgment be entered in the said cause in favor of the respondents and against the complainants, and upon the Objections to the said Motion filed by H. H. Pflueger and J. C. Pflueger, two of the complainants, on the 9th day of January, 1933, and argument having been had on said Motion and Objections and this court having on the 20th day of March, 1933, filed herein its decision thereon:

"Now therefore, it is hereby ordered, adjudged and decreed that the Final Judgment for the Superior Court of the State of California in and for the City and County of San Francisco in that certain action entitled J. C. Isenberg, et al., Plaintiffs-Complainants, vs. George Sherman, et al., Defendants-Respondents, and numbered 149913 in the files of said Court, be and become the Final Judgment and determination of all the rights of all of the parties hereto;

"It is further, in accordance with the terms of said Final Judgment in said action numbered 149913, ordered, adjudged and decreed that [here the Court named each of the 17 complainants below] do take nothing by said action as against [here the Court named each of the respondents], but that judgment be and the same is hereby entered herein in favor of said respondents and against said complainants for said respondents' costs and disbursements incurred in this action, amounting to the sum of $39.85. * * *"

J. C. Pflueger, H. H. Pflueger, and George Rodiek, three of the complainants below, alone petitioned for an appeal from the decree, and they only have filed assignments of error in this court and executed a bond on appeal. The court's order approving said bond on appeal provides that it shall act as a supersedeas. There was no summons or order of severance in the lower court as to any of those against whom the decree was rendered.

The appellees have moved to dismiss the appeal on the ground that the decree is jointly against all of the seventeen appellants, that only three have appealed, and that there have been no summons and severance.

After the filing of the motion to dismiss, the appellants filed in this court certain documents executed by or on behalf of J. F. Humburg, Bertram Von Damm, August Humburg, and J. F. Hackfeld, four of the

complainants in the original suit, each of which documents is entitled "Appearance and Waiver." The document signed by J. F. Humburg is as follows:

"Now comes J. F. Humburg, one of the co-plaintiffs in the court below, and enters his appearance herein; and now deposes and states to this Honorable Court that the appellants above named notified him orally of the appeal herein with a request that he join in the said appeal, and that he thereupon refused to so join; that he now waives and releases any and all errors that may have been committed in the court below; that he now asks this court to pass upon the merits of said appeal without reference to any supposed rights he may ever have had in connection with the action and proceedings therein.

"That he prays that this court may now make an order and judgment of severance as to him, J. F. Humburg, and thus enable the appellants above named to prosecute this appeal without any doubt or question;

"That he prays that such order or any other order may now be entered as may be consistent with the rules and practice of this court in order to permit a review of the rulings and decisions of the court below as they affect the above named appellants."

A similar document was filed by Bertram Von Damm. The one filed on behalf of the estate of August Humburg, deceased, is executed by J. F. Humburg, "Personal representative and attorney in fact of Elizabeth Humburg," "sole legatee under the will of Johann August Humburg, also known as August Humburg." It likewise is similar to the document signed by J. F. Humburg, except that it recites: "That as the personal representative and attorney in fact of the said Elizabeth Humburg, affiant states that even if he had been notified on behalf of the said Elizabeth Humburg of the purpose and intention of the above named appellants to appeal herein, with a request that he join in said appeal as the attorney in fact and personal representative of the said Elizabeth Humburg, he would have refused so to join on behalf of the said Elizabeth Humburg."

Likewise, the document filed on behalf of J. F. Hackfeld, deceased, executed by Frank E. Thompson, as ancillary administrator with the will annexed of the estate of J. F. Hackfeld, deceased, by T. G. Crothers, attorney, is similar, except that it states: "That as such Ancillary Administrator he prays that this court make and enter its order substituting him in place and stead of J. F. Hackfeld; and as such Ancillary Administrator of the aforesaid Estate of J. F. Hackfeld, he enters his appearance herein and states to this Honorable Court that if he had been notified on behalf of said Estate of the intention of the above-named appellants to appeal herein, with a request that he join in said appeal, as said Ancillary Administrator, he would have refused so to join as said Ancillary Administrator with the will annexed of the said estate of J. F. Hackfeld, deceased."

A question of jurisdiction is in issue. Therefore, for a proper decision of the cause, and of the motion to dismiss, it was thought advisable by this court to request of the Supreme Court instructions on the following important and controlling question of law arising on the foregoing statement of facts, concerning which this court was in doubt, namely: "(1) Has the United States Circuit Court of Appeals for the Ninth Judicial Circuit jurisdiction to hear and determine the questions of law and fact involved in said decree for said United States District Court for the Territory of Hawaii, from which decree said appeal was prosecuted and is now pending?"

In an opinion dated November 5, 1934, Pflueger v. Sherman, 55 S. Ct. 10, 11, 79 L. Ed. ——, the Supreme Court dismissed the certificate of this court. In the course of its opinion, the Supreme Court said: "If the decree, set forth in the certificate, be deemed to be joint, and the persons above named, in the absence of summons and severance, to be necessary parties to the appeal, the Circuit Court of Appeals would be without jurisdiction. In that aspect, there would be no occasion for the submission of the question. Hartford Accident & Indemnity Co. v. Bunn, 285 U. S. 169, 178, 182, 52 S. Ct. 354, 76 L. Ed. 685; Elliot v. Lombard, 292 U. S. 139, 141, 142, 54 S. Ct. 637, 78 L. Ed. 1175."

The question to be here considered, therefore, is whether or not the decree was joint in character.

The decree is undoubtedly joint in form. Not only does it recite "that judgment be and the same is hereby entered herein in favor of said respondents and against said complainants for said respondents' costs," etc., but it also sets forth that each of the seventeen complainants below, naming them, "do take nothing by said action as against" the various respondents, naming

them as well. A more categorical joinder of parties in a decree could not easily be imagined.

In order to escape the effect of the letter of the decree, the appellants seek to establish that its spirit is otherwise; that, "Recovery or relief granted is for the benefit of the corporation, and it is the same as if the suit had been originally instituted by it"; and that, "In such cases, therefore, the court will look behind the decree to determine if, in fact, the action is one which the corporation would or could have brought, if it had not been *either unwilling or unable to do so.*" (Italics ours.)

We have the warning of the Supreme Court itself against any such procedure. In Hartford Accident Co. v. Bunn, 285 U. S. 169, 178, 182, 52 S. Ct. 354, 356, 76 L. Ed. 685, the court said: "The judgment is joint in form and no reason appears why either or both of the parties defendant therein might not have appealed to this Court and submitted claims of error for our determination. In matters of this kind we may not disregard the face of the record and treat the judgment as something other than it appears to be. So to do probably would lead to much confusion and uncertainty."

The court's concern lest a disregard of the face of a decree may lead to "confusion and uncertainty" is further emphasized in the closing language of the same opinion: "We cannot undertake to explore the record to ascertain what issues were relied upon in courts below. So to do would lead to uncertainty and unfortunate confusion. We must accept the terms of the judgment as entered."

Recent though it is, the Bunn Case has been repeatedly quoted or cited with approval by the Supreme Court. Louisville & Nashville R. Co. v. Parker, 287 U. S. 569, 53 S. Ct. 94, 77 L. Ed. 501; Fidelity Union Casualty Co. v. Hanson et al., 287 U. S. 599, 53 S. Ct. 12, 77 L. Ed. 522; Wagner Tug Boat Co. v. Meagher, 287 U. S. 657, 658, 53 S. Ct. 120, 76 L. Ed. 567; Missouri State Life Ins. Co. v. Johnson, 288 U. S. 609, 610, 53 S. Ct. 404, 77 L. Ed. 984; Elliot v. Lombard, 292 U. S. 139, 141, 142, 54 S. Ct. 637, 638, 78 L. Ed. 1175, and, as we have seen, in the opinion dismissing the certificate in the instant case, supra.

In Elliot v. Lombard, supra, however, much relied upon by the appellants, the court held that the decree **then before it** was in three parts:

"By the first the libelant is awarded a recovery of damages in a stated sum, with interest and costs, against the claimant, there called respondent; by the second execution is awarded against the claimant and his surety 'unless this decree be satisfied or an appeal taken within ten days after service of a copy'; and by the third the claimant's cross-libel is dismissed.

"The decree is in a form long recognized as admissible in such an admiralty proceeding. The principal part—that which awards a recovery in damages for the collision—is directed only against the claimant Elliot, not against him and the surety. The only mention of the surety is in the dependent and contingent part relating to the issue of execution, and this part of the decree is based upon provisions in Admiralty Rules 5, 12, and 20 (28 USCA § 723), under which, where a release stipulation is given and the libelant obtains a decree for the payment of money, summary process of execution may be issued against the principal and sureties for the purpose of enforcing the decree.

"We think the decree is to be read in connection with the applicable statute and admiralty rules and that when so read it is not joint. That it might have been made joint is not of present importance. There was no requirement that it be so made, and in fact it was not so made."

Relying upon the Elliot Case, supra, the appellants insist that this court should read the decree in connection "with the applicable authorities and in particular in connection with Equity Rule 27 (28 USCA § 723); and, when so read, it is not joint." But reference to rule 27 discloses that it deals with stockholders' bills, and makes no reference to decrees. To apply rule 27 as the appellants ask, we should assuredly be compelled to do precisely what the Supreme Court has cautioned against, namely, "explore the record."

Holding, therefore, that there is no reason for construing the present decree as being other than what it purports to be—a joint decree—we proceed to inquire as to the rule applicable to appeals from such decrees.

The appellants concede that the general rule upon which the appellees rely is well settled, namely, "that generally, on an appeal taken only by some of the persons against whom a joint judgment is rendered, there should be a summons and severance, or its equivalent, and that, in the absence of such summons and severance or its equiva-

lent, a motion to dismiss is well taken." In view of the appellants' concession, and the statement by the Supreme Court in dismissing our certificate herein (supra), we need only cite a few cases sustaining the general proposition referred to above. Mussina v. Cavazos, 20 How. (61 U. S.) 280, 289, 290, 15 L. Ed. 878; Masterson v. Herndon, 10 Wall. (77 U. S.) 416, 418, 19 L. Ed. 953; Estis v. Trabue, 128 U. S. 225, 230, 9 S. Ct. 58, 60, 32 L. Ed. 437; Hardee v. Wilson, 146 U. S. 179, 180, 183, 13 S. Ct. 39, 36 L. Ed. 933; Inglehart v. Stansbury, 151 U. S. 68, 72, 14 S. Ct. 237, 238, 38 L. Ed. 76; Journeymen Stone Cutters Ass'n et al. v. United States, 278 U. S. 566, 49 S. Ct. 78, 73 L. Ed. 509; Copland v. Waldron (C. C. A. 9) 133 F. 217, 219, appeal dismissed Copeland v. Waldron, 200 U. S. 622, 26 S. Ct. 743, 50 L. Ed. 625; Continental & Commercial Trust & Sav. Bank v. Corey Bros. Const. Co. (C. C. A. 9) 205 F. 282, 283, 284, and Mittry Bros. Const. Co. v. United States, 75 F.(2d) 79, decided by this court on December 21, 1934.

We next consider the various substitutes or "equivalents" for summons and severance —some of them quite belated—to which the appellants have resorted in an attempt to meet the requirements of the general rule.

In the first place, it will be remembered that the complainants' attorneys filed a certain "withdrawal" in the court below, setting forth that thirteen complainants had announced that "they no longer wished to be represented" in the case.

Such a statement is not tantamount to a dismissal as to the "withdrawing" parties. In Lambert v. Rice, 143 Iowa, 70, 120 N. W. 96, 97, the Supreme Court of Iowa said: "2. Defendant urges that the plaintiff McBride is not a party to the case, and that the other plaintiffs have no interest in the litigation. This claim is based upon the statement in the record of the district court, to the effect that plaintiff Lambert 'withdraws his appearance.' There was no dismissal of the case by such plaintiff, nor any such order entered by the court. The case proceeded to trial upon its merits, and judgment was entered against McBride on the merits. Whatever may have been the intention of the plaintiff at the time such entry was made, he has continued to all legal intent a party to the case, and a judgment against him was an adjudication on the merits. He was therefore entitled to appeal."

It will be recalled that in the instant case there was no dismissal filed as to any complainant referred to in the "withdrawal."

Similarly, there was no dismissal filed or entered as to any of the complainants referred to in the affidavit filed by Mr. Neylan. Furthermore, as we have seen, the affidavit failed to cover three of the complainants who did not join in the appeal, and the "withdrawal of attorneys" was silent as to a fourth. The omission of these four complainants was sought to be supplied by the appearances and waivers to which we have referred. Such appearances and waivers, however, are not the "equivalents" of summons and severance. They were filed or lodged in this court on January 12 and 15, 1934, nearly ten months after the filing of the decree, March 21, 1933. The Supreme Court has repeatedly held that summons and severance, or their equivalents, should be filed *in the lower court*. In Estis v. Trabue, supra, the court stated that lack of "proper summons and severance" constitutes a "difficulty * * * which cannot be reached by an amendment in or by this court under section 1005 [of the Revised Statutes]." That section (28 USCA § 873) provides as follows: "The Supreme Court may, at any time, in its discretion and upon such terms as it may deem just, allow an amendment of a writ of error, when there is a mistake in the teste of the writ, or a seal to the writ is wanting; or when the writ is made returnable on a day other than the day of the commencement of the term next ensuing the issue of the writ, or when the statement of the title of the action or parties thereto in the writ is defective, if the defect can be remedied by reference to the accompanying record, and in all other particulars of form: Provided, The defect has not prejudiced, and the amendment will not injure, the defendant in error."

Mason v. United States, 136 U. S. 581, 10 S. Ct. 1062, 34 L. Ed. 545, was a case where a postmaster and his sureties were sued jointly for a breach of the bond. The postmaster and some of the sureties appeared and defended. The suit was abated as to two of the sureties, who had died, and the other sureties made default, and judgment was entered against them. A verdict was rendered for the plaintiff, and judgment was entered against the principal and all the sureties. The sureties who appeared sued out a writ of error without joining the principal or the sureties who had defaulted.

The plaintiff in error moved to amend the writ by adding the omitted parties as complainants in error, or for a severance of the parties, but the Supreme Court denied the motion and dismissed the writ of error.

In Dolan v. Jennings, 139 U. S. 385, 387, 11 S. Ct. 584, 585, 35 L. Ed. 217, Mr. Chief Justice Fuller said: "So far as disclosed by these records, the cause of action did not, on the death of one of the complainants, survive to the other; nor could there have been, nor was there any severance between Abraham G. Jennings and the legal representatives of Warren P. Jennings; nor do we think that the defect can now be cured. More than four years have elapsed since the final decrees were entered, and, as we have never had jurisdiction over the legal representatives of the deceased complainant, it is impossible for us to obtain it now."

In Inglehart v. Stansbury, supra, the court said: "Whether the interests of Inglehart's heirs and of the other defendants were sufficient in amount or value to sustain a joint appeal by all the defendants need not be considered, because it is quite clear that Inglehart's heirs could not appeal alone, without joining the other defendants as appellants, or showing a valid excuse for not joining them.

"This could only be shown by a summons and severance, or by some equivalent proceeding, such as a request to the other defendants and their refusal to join in the appeal, or at least a notice to them to appear, and their failure to do so; *and this must be evident upon the record of the court appealed from, in order to enable the party prevailing in that court to enforce his decree against those who do not wish to have it reviewed, and to prevent him and the appellate court from being vexed by successive appeals in the same matter.*" (Italics ours.)

See, also, Babcock v. Norton (C. C. A. 2) 5 F.(2d) 153, 155, certiorari denied, 268 U. S. 689, 45 S. Ct. 509, 69 L. Ed. 1158.

Finally, even if it be conceded that an "equivalent" to summons and severance could conceivably be filed in the appellate court, such filing in the instant case came far too late.

In the Bunn Case, supra, the challenged judgment became final June 15, 1931, more than six months before the Ætna Company applied to the Supreme Court for permission to become a party to the pending appeal. That court said, at page 177 of the opinion in 285 U. S., 52 S. Ct. 354, 356: "If this application and the accompanying motion to amend were granted, the practical effect would be to permit an appeal by a party to a judgment after the prescribed time had expired."

Section 230 of 28 USCA, provides: "No writ of error or appeal intended to bring any judgment or decree before a circuit court of appeals for review shall be allowed unless application therefor be duly made within three months after the entry of such judgment or decree."

See, also, American Surety Co. v. People of Colorado (C. C. A. 8) 22 F.(2d) 624, 625; Doll v. Blasius (C. C. A. 3) 69 F.(2d) 225; O'Brien's Manual of Federal Appellate Procedure (2d Ed.) ch. XVII, p. 101; Id., 1934 Cum. Supp., p. 76.

The appellants have undertaken to bring themselves within the decision in Richards v. American Bank (C. C. A.) 234 F. 300, certiorari denied, 242 U. S. 649, 37 S. Ct. 242, 61 L. Ed. 545, handed down by this court in 1916, by filing the "appearances and waivers" above referred to. These appearances and waivers, however, as we have seen, do not include the complainants covered by the withdrawal and affidavit filed by the attorneys, as already set forth. Consequently, as to those complainants, the Richards Case does not apply.

Moreover, consideration of the decisions of the Supreme Court above referred to, rendered prior to the decision in the Richards Case as well as those rendered subsequently thereto, satisfies us that the Richards decision was erroneous. It is entirely clear that after the time for appeal has expired, such belated waivers and appearances would not give the appellate court jurisdiction. This is as far as we need go in the case at bar; but it should be stated that the cases cited in the Richards opinion do not sustain the decision in that case, and that the subsequent decisions by the Supreme Court, as well as by this court and by other Circuit Courts of Appeals, would indicate that the Richards Case was wrongly decided.

The decision in the Richards Case was based upon Masterson v. Herndon, 10 Wall. (77 U. S.) 416, 418, 19 L. Ed. 953, which pointed out that the mode of summons and severance might vary. But that case does not hold, and we have found no case that has so held, that there can be an appearance in the appellate court that would give such court jurisdiction, in the absence of appropriate proceedings for summons and

severance, or the equivalent thereto, in the lower court.

To recapitulate, we hold that the decree is joint in form; that it would not be proper for us to "explore the record" to determine whether or not it is, in law and in fact, other than what it purports to be; that, the decree being joint, all the parties against whom it runs should have joined in the appeal, or the record should show that proper summons and severance, or the equivalent thereof, were had *in the court below;* that, even if it were conceded that an "equivalent" to such summons and severance could conceivably be presented in this court, the attempts to do so in the instant case, by the "appearances and waivers," did not include all the complainants and came too late; and that, therefore, there is a lack of necessary parties before us here.

Accordingly, the appeal is dismissed.